UNITED STATES of America,
Plaintiff,

v.

Bernard BENDER and Lawrence Alan
Bender, Defendants.

No. 8471.

United States District Court,
C. D. California.

Sept. 20, 1971.

Robert L. Meyer, U. S. Atty., Eric A. Nobles, Asst. U. S. Atty., Chief, Crim. Div., David Fox, Asst. U. S. Atty., Los Angeles, Cal., for plaintiff.

Stewart & Finkel by David B. Finkel, Los Angeles, Cal., for defendants.

## OPINION AND ORDER GRANTING MOTION BY GOVERNMENT FOR PHYSICAL EXAMINATION OF DEFENDANT

HAUK, District Judge.

This motion came on regularly for hearing on September 13, 1971, at 2:00 P.M., having been brought by the plaintiff seeking an order for physical examination of defendant Lawrence Alan Bender. Lawrence Alan Bender has been indicted on charges that he confederated and conspired together with his co-defendant father, Bernard Bender, to evade service in the armed forces of the United States in violation of 18 U.S.C. § 371, 18 U.S.C. § 1001 and 50 U.S.C. App. § 462. Defendant pled not guilty to these charges on August 23, 1971, at which time the case was set for jury trial on October 5, 1971.

Defendant was found "physically disqualified" for service in the Armed Forces at a pre-induction medical examination administered at the Armed Forces Examining and Entrance Station,

Oakland, California, on April 7, 1969. The Government now requests that defendant be physically examined for the purpose of obtaining full and reliable information upon the issue of whether defendant has or has had any physical condition which would disqualify him from military service.

Defendant opposes the motion on the grounds that: 1) the Court lacks the power to order the physical examination of the defendant; 2) assuming the Court's power, it should not exercise that power because the Government has failed to demonstrate that such an examination is necessary or reasonable. Defendant cites the Federal Rules of Criminal Procedure, Rule 16(c), as authority for his argument that the Court lacks the power to order the examination.[1] Defendant construes Rule 16(c) as absolutely restricting the discretionary authority of the Court in granting discovery and inspection motions in criminal cases by limiting the Court solely to the specific discovery orders set forth in Rule 16(c). However, this interpretation of Rule 16(c) flies in the face of both the letter and the spirit of modern Federal discovery practice and procedure.

Defendant correctly admits that criminal discovery has been liberalized and broadened since the original adoption of the Federal Rules of Criminal Procedure in 1946. Rule 16(c) itself was the subject of extensive revision in the 1966 Amendments to the Rules and was at that time substantially extended. And we note that the newly proposed Amendments to Rule 16 greatly enlarge the scope of both defense and prosecution discovery.[2] The steady trend of the law as embodied in the Federal Rules of Criminal Procedure is clearly toward a more liberal pre-trial discovery procedure in criminal cases.

But even more important, the Court is not confined solely to the discovery techniques and parameters laid out in the Federal Criminal Rules. Prior to the first promulgation of the Criminal Rules in 1946, Federal criminal procedure in the District Courts grew out of the inherent power of the Courts to develop their own procedure. The Federal Rules of Criminal Procedure were not designed to and do not entirely supplant this fundamental authority and residual power of the Court. It has long been held that the Federal Courts possess the inherent power to order discovery and inspection. Peek v. United States, 321 F.2d 934, 942 (9th Cir. 1963), cert. denied 376 U.S. 954, 84 S.Ct. 973, 11 L.Ed.2d 973 (1964). And we find the same theory of inherent discovery power enunciated in an early California case which authorized an order by the trial Court for physical examination of the prosecuting witness in a rape case. People v. Preston, 19 Cal.App. 675, 685, 127 P. 660 (1912). It has been urged that to the extent Rule 16 of the Federal Criminal Rules does not express a policy prohibiting any discovery not

---

1. Federal Rules of Criminal Procedure, Rule 16:

"(c) *Discovery by the Government*. If the court grants relief sought by the defendant under subdivision (a) (2) or subdivision (b) of this rule, it may, upon motion of the government, condition its order by requiring that the defendant permit the government to inspect and copy or photograph scientific or medical reports, books, papers, documents, tangible objects, or copies or portions thereof, which the defendant intends to produce at the trial and which are within his possession, custody or control, upon a showing of materality to the preparation of the government's case and that the request is rea-

sonable. Except as to scientific or medical reports, this subdivision does not authorize the discovery or inspection of reports, memoranda, or other internal defense documents made by the defendant, or his attorneys or agents in connection with the investigation or defense of the case, or of statements made by the defendant, or by government or defense witnesses, to the defendant, his agents or attorneys."

2. Preliminary Draft of Proposed Amendments to the Federal Rules of Criminal Procedure, Committee on Rules of Practice of the Judicial Conference of the United States, January 1970 (Gov.Print. Off.1970).

explicitly authorized by the Rules, the Court is free either by local rule or by its own adjudication to permit discovery on the basis of its inherent power. United States v. Taylor, 25 F.R.D. 225, 228 (E.D.N.Y. 1960). The question as to when the Court should permit this discovery is essentially one of policy, not of power. 6 Wigmore, Evidence 395 (3d ed. 1966). This theory of inherent power is incorporated in Rule 57(b), Fed.R. Crim.P., which provides that "if no procedure is specifically prescribed by rule, the court may proceed in any lawful manner not inconsistent with these rules or with any applicable statute."

◼ There is no inconsistency between the physical examination order sought by the Government and the Federal Criminal Rules or any applicable statute. For many years, Federal Courts have been expressly authorized to order examinations of defendants by psychiatrists in certain situations. 18 U.S.C. §§ 4241–4248 (1949). And, at least since 1938 and the promulgation of the Federal Rules of Civil Procedure, Rule 35, it has been well settled that when the physical condition of a party to any action "is in controversy" the Court may order the party to submit to a physical examination by a physician. Taking this Rule 35 of the Federal Civil Rules together with Rule 57(b) of the Federal Criminal Rules and in the light of the inherent power of the Court, it appears unassailable that a Federal District Court may order a physical examination of a defendant in a criminal case if the defendant's physical condition, as here, is in controversy.

Similarly, California by an almost identical procedural rule has recognized this inherent power of the Court to order the physical examination of a party to any action when his physical condition is in controversy. California Code of Civil Procedure, Section 2032, enacted in 1957, was modeled upon Rule 35 of the Federal Rules of Civil Procedure and was designed to confirm the court's authority to order such examination, en-

large its scope, and establish a uniform procedure for administration of such examinations. See Witkin, California Evidence (1966) p. 924.

◼ In the instant case, the question of defendant's physical condition is most definitely "in controversy." The indictment charges in Count Two that defendant Lawrence Alan Bender engaged in a conspiracy "to falsify, conceal and cover up a material fact and to make a false, fictitious and fraudulent statement and representation and to use a false writing knowing it to contain a false, fictitious and fraudulent statement bearing upon the Selective Service Classification of defendant Lawrence Alan Bender;" and in Count Three that the defendant "wilfully falsified, concealed and covered up a material fact" by causing a letter to be sent to his local Board stating he would need to continue orthodontic treatment in progress for at least one year, but concealed and failed to state that the treatment had ceased prior to the date of the letter. A copy of defendant's pre-induction physical report, attached as exhibit A–1 through A–5 of defendant's Points and Authorities in Opposition to the plaintiff's motion, contains the notation "Received letters re Hypoglycemia & dental fixtures." Thus, the matter of defendant's physical condition, especially as it relates to the alleged false and fictitious statement and writing concerning his physical condition supplied to the medical examiner at the time of the induction examination, is definitely "in controversy." The Court cannot say it is either unreasonable or unnecessary to order defendant to be physically examined, since the question of whether he is actually and in truth physically qualified to enter the service is a basic issue essential to the just determination of this case.

◼ The defendant argues that serious constitutional questions under the Fourth Amendment (Search and Seizure) and Fifth Amendment (Self-Incrimination) are raised by the instant motion. To the contrary, the cases uniformly stand for the proposition that

the requirement of a physical examination, performed for a reasonable purpose, in a reasonable manner, is neither compulsory self-incrimination nor unlawful search and seizure. Schmerber v. State of California, 384 U.S. 757, 86 S. Ct. 1826, 16 L.Ed.2d 908 (1966); United States ex rel. Ramos v. Pinto, 425 F.2d 1344 (3rd Cir. 1970); Ramer v. United States, 411 F.2d 30 (9th Cir. 1969). In a prosecution for draft evasion similar to the one at bar, it was held that the physical examination of the defendant, which resulted in the discovery that he had taken a drug to cause an abnormal physical condition that would disqualify him for induction, was neither an unlawful search and seizure, nor compulsory self-incrimination. Bratcher v. United States, 149 F.2d 742, 745–746 (4th Cir. 1945). The privilege against self-incrimination extends only to the testimony given or that may be given by an accused, and does not extend to examination of his body when it may be material. Holt v. United States, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021 (1910).[3]

Defendant disputes the cogency of these cases because they did not involve "court ordered" examinations. Surely, if physical examinations performed upon accused individuals in police stations solely upon the determination of probable cause made by the arresting officer have been found to pass constitutional muster, there can be no question that a medical examination supported by the clear probable cause of a grand jury indictment and conducted by a competent physician in the medically approved surroundings of the doctor's office, upon order of the Court, after full consideration and deliberation of the points and authorities submitted by both sides, is constitutionally unobjectionable. A physical examination such as this one, pursuant to the Court's further order delineating definite safeguards and pro-

tections such as the presence of his attorney and his own physician, which ensure preservation of the defendant's constitutional rights, is undeniably more satisfactory than the examinations allowed in *Schmerber* and its progeny. "The importance of informed, detached and deliberate determinations of the issue of whether or not to invade another's body in search of evidence of guilt is indisputable and great." *Schmerber, supra*, 384 U.S. 757 at 770, 86 S.Ct. 1826 at 1835.

Fortifying the Court in its determination not only that it does have jurisdiction, but also that it has the absolute duty to order this examination, is a recent order of our esteemed Brother of the Central District of California, Judge Harry Pregerson, in United States of America v. Arthur William Coats, III, C.D.Cal.No. 4829. In *Coats*, Judge Pregerson on June 18, 1970, issued his order requiring the defendant in that draft evasion prosecution, to submit to an examination by a medical doctor because of the defendant's contention that he was physically unfit for induction. Just as Judge Pregerson ordered in that case, so too here we must order a physical examination of the defendant because, by his not guilty plea to the charges, he has put in issue and therefore necessarily "in controversy", the question of his physical condition at the time of his pre-induction examination. Parenthetically, we note that Judge Pregerson's Order was unqualified, without either of the two protective safeguards which we have added here, to wit, the presence and participation at the examination, if so desired, of a physician of the defendant's own choosing as well as the salutary presence and ever-ready advice of his own attorney.

Therefore the Court, now being fully advised in the premises, and good cause appearing in accordance with the deter-

---

3. "But the prohibition of compelling a man in a criminal court to be witness against himself is a prohibition of the use of physical or moral compulsion to extort com- · munications from him, not an exclusion of his body as evidence when it may be material." 218 U.S. at 252–253; 31 S.Ct. at 6.

mination thus made, makes and enters the following:

## ORDER FOR PHYSICAL EXAMINATION OF DEFENDANT LAWRENCE ALAN BENDER

It is hereby ordered that defendant Lawrence Alan Bender shall submit to a physical examination under the direction of Dr. Eugene Wyner for the purpose of determining whether said defendant has or has had any physical condition which would disqualify him from military service. Said defendant is to report for said physical examination to 4727 Wilshire Boulevard, Room 304, at 10:00 A. M., on September 20, 1971.

It is further ordered that, for the purpose of said examination, defendant Lawrence Alan Bender maintain a high carbohydrate diet for two full days prior to said examination. This requirement may be satisfied by said defendant through eating his normal meals with the addition of three candy bars for each of the two days.

It is further ordered that, for the purpose of said examination, said defendant not eat or drink anything from 8:00 P. M., on September 19, 1971 until the completion of the examination unless otherwise directed by the physician in charge of the examination.

It is further ordered that, for the purpose of said examination, the physician in charge may include such laboratory and other tests as he deems necessary.

It is further ordered that, because trial in this matter is scheduled for October 5, 1971, the examining physician make his report to the Court and counsel for plaintiff and defendant no later than September 30, 1971.

It is further ordered that defendant's attorney and a qualified doctor chosen on behalf of defendant, may be present during the giving of the above-described physical examination.

Should defendant Lawrence Alan Bender fail to comply with the requirements of this order, the Court will consider revoking his bail and placing him in custody for the period of time necessary to insure his compliance with the above outlined requirements in order to secure a valid physical examination.