751 A.2d 1140

**COMMONWEALTH of Pennsylvania, Appellant,**

**v.**

**William SARTIN, Appellee.**

Supreme Court of Pennsylvania.

Argued April 28, 1999.

Decided May 18, 2000.

Michael J. Barrasse, Dist. Atty., William P. O'Malley, Asst. Dist. Atty., Office of the Dist. Atty., for Com.

James J. Walker, Asst. Public Defender, Tracey P. Diskin, Asst. Public Defender, Gerard Karam, Public Defender, Office of the Public Defender, for William Sartin.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## *OPINION*

ZAPPALA, Justice.

This Court granted allocatur to determine whether, in a first-degree murder case in which the Commonwealth intends to seek the death penalty, the Fifth Amendment to the United States Constitution precludes the trial court from ordering the criminal defendant to submit to an independent pretrial psychiatric examination where the defendant has already been examined by his own psychiatrist and only intends to use his psychiatrist's findings to establish mitigating factors during the penalty phase if he is convicted. For the reasons that follow, we conclude that the Fifth Amendment does not preclude a criminal defendant from having to submit to an independent pretrial psychiatric examination under these circumstances. We further conclude that the results of such examination should be placed under seal until such time as the penalty phase commences and Appellee declares his intent to present his own psychiatric evidence in mitigation.

The Commonwealth has charged Appellee with the first-degree murder of a seven-year-old female. The trial court ordered Appellee to furnish to the Commonwealth an expert report from Dr. Matthew Berger, a psychiatrist who expressed in his report the opinion that Appellee was "guilty but mentally ill," as defined in 18 Pa.C.S. § 314(c)(1). The court's

order was based upon counsel's initial indication that the report would be used at trial.[1] Through counsel, Appellee subsequently announced orally his intention to use this report only to establish mitigating circumstances[2] at the penalty phase if he was found guilty at the conclusion of the guilt phase.[3] On October 30, 1996, the Commonwealth filed a motion requesting that the trial court enter an order directing that Dr. Timothy Michaels be appointed to examine Appellee for purposes of independently assessing his mental status. On October 31, 1996, the trial court entered the requested order. On November 13, 1996, the Superior Court granted a Petition for Stay, pending the filing and disposition of a Petition for Permission to Appeal. On February 20, 1997, the Superior Court granted the Petition for Permission to Appeal. After hearing argument, the Superior Court issued an opinion reversing the order of the trial court and ordering that Appellee could not be compelled to submit to a pretrial psychiatric examination. The Superior Court determined that compelling

1. The court was authorized to compel discovery of this item based upon counsel's assertion that the report would be used at trial. Pa.R.Crim.P. 305(C)(2)(i) specifies that the trial court may compel a defendant to disclose "the results or reports of physical or mental examinations...which the defendant intends to introduce as evidence in chief."

2. While Appellee did not specify exactly what mitigating circumstances he intended to substantiate with the help of Dr. Berger's testimony, the following mitigating circumstances would arguably be implicated by a credible determination that Appellee was guilty but mentally ill:

> (2) The defendant was under the influence of extreme mental or emotional disturbance.
> (3) The capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired.
> ....
> (8) Any other evidence of mitigation concerning the character and record of the defendant and the circumstances of his offense.

42 Pa.C.S. § 9711(e). *See also Commonwealth v. Faulkner*, 528 Pa. 57, 595 A.2d 28, 36 (Pa.1991) (mitigating circumstances set forth at § 9711(e)(2), (3) and (8) arguably implicated by "guilty but mentally ill" determination).

3. Appellee, of course, is entitled to claim his innocence at trial, as he appears prepared to do, in spite of the opinion of his examining psychiatrist that he is "guilty but mentally ill" and in spite of the fact that he intends to use this conclusion to establish mitigating factors if he is convicted.

Appellee to submit to such an examination, in the absence of his having formally filed a notice of intent to raise a mental infirmity defense,[4] would violate his privilege against self-incrimination under the Fifth Amendment to the .United States Constitution and Article I, Section 9 of the Pennsylvania Constitution. We now reverse.

In *Commonwealth v. Morley,* 545 Pa. 420, 681 A.2d 1254 (1996), this Court determined that a defendant who has raised a defense based upon mental infirmity may not refuse to be examined by the Commonwealth's expert on the grounds that such examination would violate his privilege against self-incrimination under· the Fifth Amendment to the United States Constitution and/or Article I, Section 9 of the Pennsylvania Constitution. "The rationale supporting our holding ... is that where a defendant has raised a mental disability defense, a defendant has waived his or her privilege against. self-incrimination and may be compelled to submit to a psychiatric examination so that the Commonwealth can prepare its case in rebuttal." *Id.* at 1258–59 n. 5. In concluding that *Morley* was not applicable to the instant matter, the Superior Court determined that Appellee had not yet filed a notice of insanity or a mental infirmity defense, but had only stated to the trial court an intent to use his expert's report to establish mitigating circumstances at the putative penalty phase. The panel concluded that any consideration with respect to the sentencing process, when Appellee has yet to be convicted, is "speculative and premature." Slip op. at 3 n. 2. We disagree with this conclusion and determine that the Fifth Amendment does not preclude the trial court from ordering a criminal defendant to undergo an independent psychiatric examination under the circumstances presented by this case.[5]

---

**4.** The filing of a formal written notice is a prerequisite to the use of an insanity or mental infirmity defense at trial. *See* Pa.R.Crim.P. 305(C)(1)(b).

**5.** Appellee invokes both the Fifth Amendment to the United States Constitution and its Pennsylvania Constitution counterpart, Article I, Section 9. However, because we have determined that Article I, Section 9 tracks the Fifth Amendment in the context of the self-incrimination clause, the analysis herein proceeds exclusively under the Fifth Amend-

In *United States v. Hall,* 152 F.3d 381 (5 th Cir.1998), the Court of Appeals for the Fifth Circuit reviewed a situation virtually identical to the matter *sub judice,* in which the defendant sought to interpose the Fifth Amendment as a bar to a pretrial independent psychiatric examination after he had announced his intention to present psychiatric testimony in mitigation of punishment at sentencing. The court held that a defendant who puts his mental state at issue with psychological evidence may not then raise a Fifth Amendment claim to bar the state from rebutting in kind. *Id.* at 398. "This rule rests on the premise that it is unfair and improper to allow a defendant to introduce favorable psychological testimony and then prevent the prosecution from resorting to the most effective and in most instances the only means of rebuttal: other psychological testimony." *Id.* The court noted that just as a defendant cannot testify at the sentencing hearing regarding his remorse or acceptance of responsibility and then refuse cross-examination on this issue, a defendant also cannot offer expert psychiatric testimony based on his own statements to a psychiatrist and then deny the government the opportunity to do so as well in rebuttal. *Id. See also Estelle v. Smith,* 451 U.S. 454, 461–69, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981) (holding that the admission of statements made by the defendant during a pretrial psychiatric examination violated his Fifth Amendment privilege against compelled self-incrimination because he was not advised before the examination that he had a right to remain silent and that any statement that he made could be used against him at a capital sentencing hearing, but noting that "a different situation arises where a defendant intends to introduce psychiatric evidence at the penalty phase.").

The reasoning of the Fifth Circuit in *Hall* is sound. There is no principled basis for the distinction created by the Superior Court between an announcement by counsel to the court of an intention to use psychiatric testimony at the penalty phase,

ment. *See Morley,* 681 A.2d at 1257 (in all instances other than the protection given by the Pennsylvania Constitution to reputation, the provision in Article I, § 9 against self-incrimination tracks its federal counterpart) (citations omitted).

as opposed to a formally filed Notice of Intent to proceed with a mental infirmity defense at the guilt phase. In either case, the Fifth Amendment does not preclude the government from gaining a balanced perspective of the defendant's psychological makeup. The Fifth Amendment does not spring to life merely because a defendant's intentions to use psychiatric testimony have been expressed orally rather than through a formal filing, or because the psychiatric testimony will be used in an effort to reduce the defendant's culpability at sentencing rather than at trial. Therefore, we conclude that the Superior Court erred in its determination that the Fifth Amendment barred the examination which the trial court ordered the defendant to undergo in this matter.

 Notwithstanding the foregoing, it is important to note that Appellee has not categorically waived his Fifth Amendment privilege against self-incrimination merely by announcing his intention to submit expert psychiatric testimony at the sentencing hearing. *See Brown v. Butler,* 876 F.2d 427, 430 (5th Cir.1989) (holding that the state could not introduce expert testimony based upon a previous psychological examination of the defendant where the defendant announced an intention to offer expert psychological evidence but never actually did). The Commonwealth may only utilize the results of its psychological examination in a rebuttal capacity, and only as to those issues which have been implicated by the expert testimony of the defendant's psychiatrist. Moreover, we conclude that the results of the Commonwealth's independent psychiatric examination should be sealed until such time as the penalty phase of Appellee's trial takes place.[6]

On this point we depart from the holding of the Fifth Circuit in *Hall* and instead follow the reasoning employed by several District Courts in *United States v. Beckford,* 962 F.Supp. 748, 761–764 (E.D.Va.1997); *United States v. Haworth,* 942 F.Supp. 1406, 1408–9 (D.N.M.1996); *and also United States v. Vest,* 905 F.Supp. 651, 654 (W.D.Mo.1995).

---

**6.** The issue of how to treat the results of the independent psychiatric examination is intertwined with the issue of whether the examination may be conducted.

In *Beckford,* after concluding that the Fifth Amendment did not preclude the court from requiring the defendant to submit to an independent pretrial psychiatric examination where the defendant announced his intention to present his own such report in mitigation during the penalty phase, the court, nevertheless, pointed out that

> courts must remain mindful that the ... independent examination sought by the Government [has] the potential for treading on the defendant's Fifth and Sixth Amendment rights.

*Id.* at 763. Given this concern, the court ordered, among other things, that the results of the government's independent examination be placed under seal, that the court-appointed mental health professional conducting the examination for the government not discuss his examination with anyone unless and until the results were released and that the results only be released if a penalty phase hearing took place at which the defendant confirmed his intent to offer mental health or mental condition evidence in mitigation. *Id.* at 764.

As in *Beckford,* we too hold that any independent psychiatric pretrial examination conducted by the Commonwealth should be subject to the foregoing safeguards. There are no compelling reasons why the Commonwealth should be entitled to the results of such an examination prior to the time their use becomes relevant. Additionally, it is far more practical to grant the Commonwealth additional time to review the results following the conclusion of the guilt phase, where requested, than to have the trial proceedings possibly interrupted and delayed by the trial court's need to resolve issues regarding their improper use at trial.

In sum, we hold that the Superior Court erred in determining that the Fifth Amendment barred the trial court from ordering Appellee to submit to an independent pretrial psychiatric examination when Appellee had already undergone his own psychiatric examination and had announced his intention to use the results of this examination at the penalty phase if he was convicted. We further hold that the results of such examination should be placed under seal and the additional

safeguards outlined above be followed. Accordingly, we reverse and remand for further proceedings consistent with this opinion. Jurisdiction is relinquished.

Justice CASTILLE files a Concurring and Dissenting Opinion in which Justice CAPPY joins.

CASTILLE, Justice, concurring and dissenting.

I agree with the Majority that the Fifth Amendment does not preclude a criminal defendant from having to submit to an independent pretrial psychiatric examination under these circumstances and, therefore, join in that portion of the opinion. However, I am compelled to dissent from that portion of the Majority Opinion that fashions various procedural "safeguards" notwithstanding the absence of a Fifth Amendment violation–i.e., the requirement that the results of that examination must be sealed, that the mental health professional who prepared the report must be subject to a gag order, and that the report may only be disclosed after the defendant "declares his intention to present psychiatric evidence in mitigation." *See* Op. at 1141.

It is not clear whether the Majority believes that the safeguards it has fashioned are mandated by the Fifth Amendment or are simply "more practical." *See* Op. at 1144. The primary reasoning provided by the Majority for its procedural safeguards is the following one-sentence quote from an opinion by a District Court in Virginia:

> courts must remain mindful that the ... independent examination sought by the government [has] the potential for treading on the defendant's Fifth and Sixth Amendment rights.[1]

Op. at 1144, *quoting United States v. Beckford*, 962 F.Supp. 748, 763 (E.D.Va.1997). The Majority does not explain why it believes this is so, much less why that perceived "potentiality" requires the safeguards it adopts.

1. As appellant has not raised a claim under the Sixth Amendment, the Majority presumably relies on the district court opinion only with regard to the Fifth Amendment reasoning.

All that is required to adequately protect appellee's rights under the Fifth Amendment is that the Commonwealth not be permitted to use the information contained in the report against appellee during the guilt phase of trial or, for that matter, during the penalty phase unless and until appellee raises the issue of his mental condition.[2] The Fifth Amendment right at issue is the right against self-incrimination, a right that is concerned primarily with trial matters. To protect that trial right, the Fifth Amendment has been extended to certain pre-trial settings. But even where, unlike here, that right has been violated, exclusion of the evidence from trial has been deemed an adequate remedy. *See, e.g., Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The same remedy is proper here.

Federal Rule of Criminal Procedure 12.2(c), which governs the use of an independent psychiatric examination of a defendant when the defendant has announced his intention to rely on an insanity defense, is instructive in this regard. Rule 12.2(c) provides:

No statement made by the defendant in the course of any examination provided for by this rule, whether the examination be with or without the consent of the defendant, no testimony by the defendant based upon such statement, and no other fruits of the statement shall be admitted in evidence against the defendant in any criminal proceeding except on an issue respecting mental condition on which the defendant has introduced testimony.

Fed.R.Crim.P. 12.2(c). Nothing in this rule requires that the prosecution be denied *access* to the results of the examination until the very moment that the defendant introduces evidence regarding his mental health. Nonetheless, Fed.R.Crim.P. 12.2(c) has repeatedly been upheld in the face of challenges mounted under the Fifth Amendment's right against self-incrimination. *United States v. Hall,* 152 F.3d 381, 400 (5th Cir.1998)(*citing United States v. Lewis,* 53 F.3d 29, 35 n. 9

2. As the Majority notes, the Fifth Amendment analysis is equally applicable to appellee's claim under Article I, Section 9 of the Pennsylvania Constitution. Op. at 1142 n. 5.

(4 th Cir.1995) and *United States v. Stockwell*, 743 F.2d 123, 127 (2d Cir.1984)).

As the Fifth Circuit Court of Appeals noted in *Hall*, the risk that the prosecution will improperly use information learned from a psychiatric evaluation during the guilt phase when the defendant has undergone a psychiatric examination in anticipation of an insanity defense is no greater than the risk that it will do so during the penalty phase in the circumstances at issue in this case. *Hall, supra*. There is, in short, no constitutionally mandated reason to provide the safeguards the Majority has fashioned here. The better practice, one that fully protects whatever residual Fifth Amendment claim can be said to be implicated, is that provided for in the federal rule: that providing the information to the prosecution is not a license to use it. The trial court must merely be receptive, as it is in countless other Fifth Amendment situations in which evidence has been ruled either inadmissible or conditionally admissible, to objections that the prosecution is attempting to use the information improperly. If the defendant believes that the prosecution is improperly seeking to introduce evidence that it derived from the government's psychiatric examination, then the defendant may make that objection. The trial court will then be required to exclude the evidence unless the prosecution carries its burden of establishing that the evidence originated from an independent, untainted source. *See Alderman v. United States*, 394 U.S. 165, 183, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969)(when a defendant claims that the government has sought to introduce the fruits of a coerced confession, the defendant must go forward with specific evidence demonstrating taint, upon which the government "has the ultimate burden of persuasion to show that its evidence is untainted."); *Hall, supra*, at 399 (applying evidentiary framework of *Alderman*'s "fruit of the coerced confession" doctrine in evaluating admissibility of evidence arguably stemming from pretrial independent psychiatric examination).

Nor is it logical to seal the findings until the penalty phase of trial given current Pennsylvania practice. In the guilt phase of a capital case in which a defendant may or may not

present psychiatric evidence, the psychiatric examination results are not sealed until the time that the defendant puts the psychiatric defense in issue. The same should hold true in the penalty phase. Just as there is no compelling reason to place such evidence under seal at the guilt phase pending presentation of the defense, there is no compelling reason why such evidence should be sealed at the penalty phase unless and until the defense raises the mental health mitigators.

The only other reason proffered by the Majority in support of the seal and gag procedure beyond the potential Fifth Amendment issue that it perceives is a conclusion that it is "far more practical" to grant a continuance prior to the penalty phase of trial than to resolve at trial questions concerning attempted improper use of the results in the guilt phase. But there being, in my view, no Fifth Amendment issue unless and until the prosecution improperly attempts to use the information at trial, I see no practicalities to weigh. In any event, even if there were a Fifth Amendment concern present, the Majority's solution disregards the realities of trial. Depending upon the contents of the sealed examination report, the Commonwealth or the defendant, or both, may need to conduct further investigation. Indeed, this is particularly likely for the defendant, because the Commonwealth's expert at least knows what is in the defendant's expert's report as well as in his own report. On the other hand, the defendant will have to have the report reviewed by his own expert in order to effectively make use of or to counter the results and to cross-examine the witnesses. Thus, the defense as well as the Commonwealth will be hampered in the ability to prepare effectively for the penalty phase of trial, raising the prospect of significant delay and inconvenience.[3] To hold that the report must be sealed is to return to the now discredited days of trial by ambush and surprise rather than the modern

3. In this regard, it is worth noting that appellee in the case *sub judice* has not requested the protection that the Majority's rule would force upon him. Because the examination may well uncover something *helpful* for the defense, many defendants may *want* the results immediately. Indeed, the report may provide support for an insanity or diminished capacity defense at trial or for a claim that the defendant is incompetent to stand trial.

theory of open discovery and pre-trial announcement of defenses.[4]

In the meantime, of course, the jurors' recollection of the trial evidence, which is frequently adopted at sentencing, will fade. *See Beckford, supra* at 763. The inconvenience caused to jurors by the indeterminate delay required by the Majority's holding midway through a capital proceeding is not insignificant. In addition, if the jury is sequestered, the Commonwealth will bear the added expense of housing and feeding the jury during any delay and the jurors themselves will be subject to great personal inconvenience while both the prosecution and the defense prepare to initially *read* the report and then prepare to meet the report's conclusions or rebut them. On the other hand, determining the admissibility of evidence is an integral part of the trial court's responsibility at trial; I fail to see how challenges to trial evidence on the ground that it was derived from the then-inadmissible psychiatric examination report will cause any more delay in the proceedings than rulings on hearsay, the authenticity of documents, or any of a myriad of other evidentiary issues faced by trial courts on a daily basis.

Finally, I would note that the procedural safeguards fashioned by the Majority can succeed in their stated purpose – a purpose that ignores the countervailing considerations above – only if the mental health professional evaluating appellee abides by the order to seal the report and the corresponding gag order. There is no reason to believe that a mental health professional would be less likely to subvert the court's order than a prosecutor ordered not to improperly use the information gained from the evaluation. As officers of the court, prosecutors have an obligation to abide by court orders. They are subject to serious sanctions, up to and including discharge of the defendant, for violating a trial court's rulings. Officers of the court who can be trusted not to refer to statements that have been suppressed, for example, likewise can be trusted to

4. Indeed, practically speaking, it would seem to be built-in error if defense counsel, possessing expert evidence to support a mental mitigator, failed to present that evidence to the fact finder.

refrain from improperly using pre-trial psychiatric reports unless and until the defendant raises the issue of his mental health, at whatever stage of the proceedings. The more practical solution is to permit disclosure.

For the foregoing reasons, I join in the determination to reverse and remand for a pre-trial psychiatric evaluation, but dissent from the holding that the results of that examination must be sealed and the independent expert gagged unless and until the defendant "declares his intent" to present psychiatric evidence in mitigation.[5]

Justice CAPPY joins this concurring and dissenting opinion.

---

**5.** I should also note that, even if I could agree that the Fifth Amendment requires a procedural rule along the lines fashioned by the Majority, the Majority's rule provides insufficient guidance. For example, the rule does not provide a point certain by which the defendant must announce his intention: i.e., before the penalty phase begins, after the Commonwealth has rested in that phase, before the defendant calls his mental health expert, or at some other, unspecified time.