**UNITED STATES of America,**

v.

**Tommy EDELIN, Defendant.**

**No. CRIM 98–264.**

United States District Court, District of Columbia.

Feb. 8, 2001.

Cary Clennon, Washington, DC, for Defendant Bostick.

Pleasant S. Brodnax, Washington, DC, for Defendant Tommy Edelin.

James W. Rudasill, Jr., Washington, DC, for Defendant Tommy Edelin.

Richard K. Gilbert, Washington, DC, for Defendant Johnson.

Christopher Davis, Washington, DC, for Defendant Earl Edelin.

Shawn Moore, Federal Public Defender for D.C., Washington, DC, for Defendant Marbury.

Jensen Barber, Washington, DC, for Defendant Mosley.

William M. Sullivan, AUSA, Washington, DC, for the Government.

## MEMORANDUM AND ORDER

LAMBERTH, District Judge.

Upon consideration of the Government's Motion for Notice and Reciprocal Discovery of Mental Health Defenses to be Raised at the Penalty Phase of Trial and for a Court-ordered Mental Evaluation of Defendant Tommy Edelin, defendant Tommy Edelin's Opposition thereto, and the relevant analysis of other federal courts, the Court hereby GRANTS in part and DENIES in part the Government's Motion.

### I. Background

Defendant Tommy Edelin has been charged in the Superseding Indictment with intentional killings while engaging in, and working in furtherance of, a continuing criminal enterprise, in violation of Title 21, United States Code, Section 848(e). On June 30, 2000, the Government filed a Notice of Intent to Seek the Death Penalty, in accordance with Section 848(h), and stated therein its intent to seek the death penalty if the defendant is convicted of Counts Twelve, Fourteen, or Sixteen of the Superseding Indictment. The Government has also provided the defendant with a specific list of statutory and non-statutory aggravating factors it will seek to prove as the basis for the imposition of the death penalty. Defendant Tommy Edelin will stand trial with five of his alleged co-conspirators. Each of his five co-defendants faces the possibility of life in prison without parole. Defendant Tommy Edelin faces the possible imposition of the death penalty.

### II. Government's Motion for Notice

The Government has requested that the Court enter an order requiring defendant Tommy Edelin, if he intends to introduce evidence of his mental health or capacity at any phase of the trial, to file a notice of intent to produce such evidence by a date set by the Court.[1] The Government asks

---

1. If the defendant were to seek to introduce mental health evidence during the guilt phase of trial, he would be required to provide notice to the Government and the Court "within the time provided for the filing of pretrial motions or at such later time as the Court

that the notice specify: a) the nature of the proffered mental condition or defect and the date of its onset; b) the identities of the mental health experts who will testify or whose opinions will be relied upon and their qualifications; and c) a summary of the diagnosis or diagnoses of said mental health experts and a summary of the basis for their opinions. The Government further requests that any examination of defendant Edelin undertaken by a defense expert be recorded by videotape so that the Government and its experts may have adequate opportunity to evaluate the accuracy of said examination.

The Government also proposes that if defendant Edelin gives notice of intent to raise a mental health defense, he should submit to examination by an expert or experts of the Government's choosing. Furthermore, the Government requests that the defense provide discovery of any and all materials supplied to the defense experts that form the basis of their opinions, including all medical records and other documents.

### III. Analysis

#### A) Inherent Judicial Power of the Court

The Court will first address whether the Court has the authority to order the mental health examination of the defendant if he were to file notice of his intent to introduce mental health information during the sentencing phase of trial. The Government asserts that although there is no directly applicable statute, once the de-

fendant has given notice that he will raise mental health issues as mitigation factors at the sentencing phase of the trial, the Court has the inherent authority to order the defendant to submit to an examination by the Government's mental health experts.

The Government's proposal for a mental health examination of the defendant, for the purpose of rebutting evidence presented by the defendant at sentencing, closely parallels the statutory provisions for the examination of the defendant when mental health issues will be raised during the guilt phase of trial. Under Federal Rule of Criminal Procedure 12.2, the defendant is required to give notice to the prosecution of his intent to present mental health evidence as a defense; if a defense of insanity will be used, the court may order, in some cases, the Government to examine the mental health of the defendant. FED. R. CRIM. P. 12.2(b) and 12.2(c) (providing that in "an appropriate case, the court may" order the examination of the defendant where the defendant "intends to introduce expert testimony relating to a mental disease or defect or any other mental condition of the defendant bearing upon the issue of guilt ...."). Examinations under 12.2(c), pursuant to 18 U.S.C. § 4242, are used in cases where federal defendants claim insanity.[2] Rule 12.2(c) only allows the fruits of such an examination to be used against the penal interests of the defendant on "issue[s] respecting mental condition on which the defendant has in-

---

may direct." FED. R. CRIM. P. 12.2(a); *see also* FED. R. CRIM. P. 12(b) (same). The date for filing pretrial motions in this case has passed, the Court did not specify a separate deadline for filing notice of intent to present mental health evidence, and none of the six defendants has filed notice regarding the presentation of mental health evidence during the guilt phase of the trial.

2. 18 U.S.C. § 4242(a) reads as follows:

"Upon the filing of a notice, as provided in Rule 12.2 of the Federal Rules of Criminal Procedure, that the defendant intends to rely on the defense of insanity, the court, upon motion of the attorney for the Government, shall order that a psychiatric or psychological examination of the defendant be conducted ...."

troduced testimony." FED. R. CRIM. P. 12.2(c).

Discovery requirements are also imposed on capital defendants under the Federal Rules of Criminal Procedure 12.2 and 16(b). Capital defendants raising mental health defenses at the guilt phase of trial are required to provide notice and discovery to the Government. *See,* FED. R. CRIM. P. 12.2, 16(b). Federal Rule of Criminal Procedure 16(b)(1) establishes reciprocal discovery provisions related to the defendant's guilt phase evidence, those provisions extend to evidence of the mental condition of the defendant.

Although there is no statute that is directly applicable to the court ordered examination of a capital defendant raising a mitigating factor related to his mental health in the sentencing phase of the trial, the procedures ordered by the Court at the conclusion of this Memorandum and Order clearly follow the guidelines established by Rule 12.2 and Rule 16 of the Federal Rules of Criminal Procedure as they relate to the examination of the mental health of the defendant during the guilt phase of trial.

The function of mental health issues which may be raised during the penalty phase of a capital prosecution is analogous to the function served by the insanity defense presented during the guilt phase of capital and non-capital trials. For that reason, the analytical framework established by the Federal Rules of Criminal Procedure provides guidance in determining what is appropriate in terms of notice and reciprocal discovery in the penalty phase of a capital trial under 21 U.S.C. § 848.

In going beyond the statutory language of 21 U.S.C. § 848 and using the framework provided in rules 12.2 and 16 of the Federal Rules of Criminal Procedure, the Court uses its inherent judicial powers to provide the procedure necessary for a just and efficient resolution of the sentencing phase of the trial.[3] This Circuit has previously recognized the inherent judicial powers of trial courts. *See Winn v. United States,* 270 F.2d 326 (D.C.Cir.1959), *cert. denied,* 365 U.S. 848, 81 S.Ct. 810, 5 L.Ed.2d 812 (1961). Other courts have recognized that the Federal Rules of Criminal Procedure themselves originated in the discovery procedures established by District Courts in the absence of federal rules of procedure. *See United States v. Kloepper,* 725 F.Supp. 638 (D.Mass.1989); *United States v. Bender,* 331 F.Supp. 1074 (C.D.Cal.1971).

Although the defendant argues that discovery outside the Federal Rules of Criminal Procedure should not be permitted, courts in the District of Columbia have recognized that Rules 12.2 and 16(b) do not necessarily exclude discovery of evidence that falls outside the rules. *See United States v. North,* 708 F.Supp. 399, 401 (D.D.C.1988) (ordering defendant to produce pretrial classified documents upon which he intended to rely at trial).

The judicial authority to regulate procedure beyond the scope of the Federal Rules of Criminal Procedure is further enhanced by the Rules themselves. Rule 57(b) provides that where no law or rule is directly applicable, "[a] judge may regulate practice in any manner consistent with federal law, these rules, and local rules of the district." FED. R. CRIM. P. 57(b); *see also, United States v. Webster,* 162 F.3d 308, 339 (5th Cir.1998) (finding that Feder-

---

**3.** The Court here refers to the sentencing of the defendant after the guilt phase of the trial. It should be self-evident that the capital sen-

tencing of the defendant will only occur if the jury finds him guilty of one of the three capital charges in the Superseding Indictment.

al Rule of Criminal Procedure 57(b) can be used to compel a defendant to undergo a psychological examination). The Court finds that the penalty phase of a capital case, where there should be a premium placed upon accuracy and fairness, is an appropriate circumstance where additional reciprocal discovery should be provided.

Several courts have recognized the inherent power of trial courts to require a mental health examination of the type requested here. These courts have held that a defendant's Fifth Amendment rights are not violated by a court ordered mental health examination when the defendant has provided notice of intent to produce mental health expert testimony in support of a mitigating factor at sentencing. *See, United States v. Webster*, 162 F.3d 308, 340 (5th Cir.1998); *United States v. Beckford*, 962 F.Supp. 748 (E.D.Va.1997); *United States v. Haworth*, 942 F.Supp. 1406 (D.N.M.1996); *United States v. Vest*, 905 F.Supp. 651 (W.D.Mo.1995); *Commonwealth v. Sartin*, 561 Pa. 522, 751 A.2d 1140 (2000). If the defendant introduces evidence or testimony at trial related to an examination of the defendant by a mental health expert, the Government may, in some cases, independently examine the mental health of the defendant. This does not violate the defendant's Fifth Amendment rights against self-incrimination. *See, Beckford*, 962 F.Supp. 748; *Haworth*, 942 F.Supp. 1406; and *Vest*, 905 F.Supp. at 652.

The Court finds that it has the authority to order the mental health examination of the defendant if he provides notice of intent to present mental health information in support of a mitigating factor to be raised at sentencing. Furthermore, the Court finds that this is an appropriate case for expanded discovery of certain information related to the information to be used to support mitigating and aggravating factors at sentencing.

B) *Government's Examination of the Defendant*

In order to determine whether the Government should be allowed to examine the mental health of the defendant, the Court must resolve several issues. Using the framework established by Rules 12.2 and 16 of the Federal Rules of Criminal Procedure, as well as the discretionary grant of judicial power under Rule 57(b) of the Federal Rules, the Court must establish whether notice of intent to raise mental health related mitigation factors at sentencing is required, and whether the defendant may be required to submit to a court ordered examination and to reciprocal discovery obligations.

The Government's request for an examination of the defendant is sensible, especially considering the position of the defendant that he will produce expert testimony at the time of sentencing. The Government has a statutory right to rebut information presented by the defense as to mitigating factors at sentencing. 21 U.S.C. § 848(j).[4] The Court, however,

4. 21 U.S.C. § 848(j) reads in part:
   .... Any other information relevant to such mitigating or aggravating factors may be presented by either the Government or the defendant, regardless of its admissibility under the rules governing admission of evidence at criminal trials, except that information may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. The Government and the defendant shall be permitted to rebut any information received at the hearing and shall be given fair opportunity to present argument as to the adequacy of the information to establish the existence of any of the aggravating or mitigating factors and as to appropriateness in that case of imposing a sentence of death.

must be cognizant of the defendant's Fifth and Sixth Amendment rights in considering a Motion for a mental health examination of the defendant.

The United States Supreme Court, in *Estelle v. Smith*, recognized that in some circumstances, requiring a defendant to undergo a psychiatric examination would violate the defendant's Fifth and Sixth Amendment rights. *Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981). The Estelle Court found that the defendant's statements and conduct during a compelled psychiatric evaluation could not be used by the Government as evidence [5] of aggravating factors during the penalty phase of a trial where the defendant was not advised of his right to counsel or his Miranda rights.[6] The Court held that the results of the psychiatric evaluation could not be used when the defendant did not waive his Sixth Amendment right to counsel and was not advised of his Miranda rights prior to the examination. *Estelle*, 451 U.S. at 462, 101 S.Ct. 1866.[7]

The Supreme Court revisited the *Estelle* rule with *Buchanan v. Kentucky*, 483 U.S. 402, 107 S.Ct. 2906, 97 L.Ed.2d 336 (1987). In *Buchanan*, the Supreme Court held

that when a defendant "presents psychiatric evidence, then, at the very least, the prosecution may rebut this presentation with evidence from the reports of the examination that the defendant requested." *Buchanan*, 483 U.S. at 422, 107 S.Ct. 2906 (citations omitted). The Court decided that in such a situation, the defendant would not have a Fifth Amendment privilege against the introduction of mental health testimony by the prosecution. Thus, the defendant's intent to introduce mental health evidence at the penalty phase of a capital prosecution limits the protection provided by the Fifth Amendment. Where the decision to introduce mental health information during a capital sentencing is made upon the advice of counsel, there is no infringement of the Sixth Amendment when that decision leads to the Government's evaluation of the defendant's mental health.

More recently, courts have established that it is Constitutional for the Government to use information from a compelled psychiatric evaluation to rebut information presented by the defense under 21 U.S.C. § 848(j) if the defendant's right to counsel

**5.** The Court uses "evidence" and "information" interchangeably in this Memorandum and Order, but it should be noted that under 21 U.S.C. § 848(j), information does not have to meet the requirements of the Federal Rules of Evidence to be admitted at the sentencing phase of trial. *See* 21 U.S.C. § 848(j).

**6.** The Supreme Court in *Estelle* also intimated that "a defendant can be required to submit to a sanity examination," and presumably some other form of mental examination, when "his silence may deprive the State of the only effective means it has of controverting his proof on an issue that he interjected into the case." *Estelle*, 451 U.S. at 465, 101 S.Ct. 1866. The Court, in order to safeguard the Government's access to information regarding the mental health of defendant Edelin, requires the defendant to submit to a mental health examination by a Government

expert. If he chooses to exercise his Fifth Amendment right to remain totally silent after being given a *Miranda* warning, he may forfeit his right to introduce evidence of his mental condition at the penalty phase of trial. The Court has implemented a variety of other safeguards in this Memorandum and Order to protect the Fifth and Sixth Amendment rights of the defendant.

**7.** The defendant in *Estelle* did not open the door for mental health information to be brought into the penalty phase of his trial. *Estelle v. Smith*, 451 U.S. at 466, 101 S.Ct. 1866. He did not introduce any psychiatric evidence at trial. The Government introduced its own evidence to show the future dangerousness of the defendant; the Government's evidence was not used to rebut information presented by the defendant.

and Miranda rights were protected. These courts have decided that the procedure in a capital sentencing under 21 U.S.C. § 848 requires that the Government be allowed pretrial notice of mental health information to be raised at sentencing, and that the Government be allowed to examine the mental health of the defendant. *See United States v. Beckford*, 962 F.Supp. 748 (E.D.Va.1997); *United States v. Haworth*, 942 F.Supp. 1406 (D.N.M. 1996); *United States v. Vest*, 905 F.Supp. 651 (W.D.Mo.1995).

■ The Court agrees with the findings of the courts listed above and finds that the defendant must provide notice of his intent to rely on mental health information at sentencing prior to a date set by the Court. In this case, that date will be February 23, 2001. Defendant Edelin's case, however, is different from prior cases in considering whether the Court should order an examination of the mental health of the defendant. The defense has indicated that it will likely present testimony of a neurologist who has examined the defendant's health with respect to a gunshot wound the defendant suffered to his head when he was a teenager.[8] The defense has also identified a likely mental health expert who will testify based on a review

of medical records of the defendant and other documentation, rather than interviewing the defendant himself.[9]

Although the defense has until February 23, 2001 to decide what mental health evidence it will produce at the time of sentencing, the Court finds it expeditious to decide whether the Government would have the right to examine the mental health, apart from any neurological examination, of the defendant even if the mental health expert for the defense does not examine the defendant and instead relies on other information in formulating his opinions regarding the defendant.[10] There is a gap in the case law as to the legitimacy of a court ordered examination of the defendant in circumstances such as these.

There is a similar gap in the applicable statutes. The defendant argues that 21 U.S.C. § 848 was drafted as a comprehensive guide to pre-trial and trial procedure in capital cases. If it were intended as a comprehensive guide for courts, the defendant argues that it would be impermissible for the Court to use its inherent judicial powers to order the examination of the defendant by the Government's experts. Contrary to the argument of the defendant, the terms of the statute are not comprehensive. The statutory provisions

---

**8.** Counsel for the defendant informed the Court about the likely use of expert testimony during the sentencing phase of trial.

**9.** The defendant shall provide notice of the extent of the testimony expected to be offered by the mental health expert. If that testimony is based on an examination of the defendant or a review of information about the defendant, the Court's Order will stand. If the defendant intends to offer only general testimony that refers neither to the defendant specifically, nor to unique characteristics of the defendant gleaned from interviews or other information provided by the defense to the expert witness, the Court may, upon proper motion, reconsider this Order. The defendant would be walking a very fine line between

information that is substantially more prejudicial than probative in presenting such information. *See* 18 U.S.C. § 848(j).

**10.** The defendant, having been examined by his neurologist, and pursuant to the reasoning of the Court in this Memorandum Opinion, shall be examined by a corresponding Government expert witness. The Court will address the examination of the defendant by a Government mental health expert separately. Ultimately, the defendant may be examined by two different Government experts, this would allow the Government to rebut the testimony presented by defense witnesses who are experts in the same or similar areas of psychiatry or neurology.

clearly indicate that it was "not intended as a complete guide to pre-trial and trial procedure in capital cases." *United States v. Beckford*, 962 F.Supp. 748, 759 (E.D.Va. 1997). The Court must therefore supplement the limited procedures set forth by Congress in the statute.

This situation creates a quandary for the Court, because if the defendant produces mental health information at sentencing, the Government must have the opportunity to rebut that information. 21 U.S.C. § 848(j) ("The Government and the defendant shall be permitted to rebut any information received at the hearing and shall be given fair opportunity to present argument as to the adequacy of the information to establish the existence of any of the aggravating or mitigating factors and as to appropriateness in that case of imposing a sentence of death").

Although the Government's right to rebut is clear, it is not so evident whether the Government should have the right to use a mental health expert to examine the defendant when the defendant has not yet been examined by his own mental health expert. The Court finds that the Government does have the right to examine the defendant, on the basis of the following rationale.

■ The Government has requested access to "any and all materials supplied to the defense expert that form the basis of his opinion, including all medical records and other documents." *Government's Motion for Notice*, p. 1. The Government need not have access to the files and material evaluated by the defense experts.[11] The revelation of this material would necessarily reveal attorney-client privileged materials, as well as attorney work product materials. *See generally, Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947); *In re Lindsey*, 148 F.3d 1100, 1103 (D.C.Cir.1998); *In Re Sealed Case*, 737 F.2d 94, 98–99 (D.C.Cir.1984); *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854 (D.C.Cir.1980); *Alexander v. Federal Bureau of Investigation*, 186 F.R.D. 154, 160–61 (D.D.C.1999). The disclosure of the materials reviewed by the defense experts would also undermine the defendant's Sixth Amendment right to counsel. *See United States v. Beckford*, 962 F.Supp. 748, 764 n. 16 (E.D.Va.1997). The Court will not order the disclosure of such material.

If, however, the Government expert witnesses do not have access to the defendant, and cannot use the materials provided to the defense expert witnesses to evaluate the defendant, the Government's ability to rebut testimony and evidence produced by the defendant at sentencing would be illusory. If the Government cannot examine the defendant, the only options available to the Government for rebutting the information provided by the defendant would be cross-examining the defendant's experts, lay testimony, and

11. This is true as it applies to information provided to the defense expert witnesses other than the medical records of the defendant, which will likely be relevant and discoverable given the indications that the defense is considering the presentation of information regarding an organic brain disorder caused damage done by a gunshot to the head of the defendant when he was a teenager. It is important that the Government expert witnesses have access to the same medical records relevant to a potential organic brain disorder as the defense expert witnesses. As has been established in other courts, the experts for both the Government and the defense need accurate information in order to come to a reliable determination of the mental health of the defendant. *See United States v. Albright*, 388 F.2d 719, 724–25 (4th Cir. 1968); *United States v. Beckford*, 962 F.Supp. 748, 758 (E.D.Va.1997); *United States v. Haworth*, 942 F.Supp. 1406, 1407–08 (D.N.M. 1996); *United States v. Vest*, 905 F.Supp. 651 (W.D.Mo.1995).

testimony of Government experts predicated upon courtroom observations and hypothetical questions. None of these appear to be an accurate or thorough method for determining the mental status of the defendant.

Under 21 U.S.C. § 848(j), the Government clearly has the opportunity to rebut information of mitigating factors provided at sentencing by the defendant. Various courts have held that in order to make the statutory language meaningful, the defendant must provide some discovery to the Government. The court in *United States v. Vest* explained "[I]f a defendant elects to present mitigation testimony addressing his mental status, then the government is free to rebut such testimony." 905 F.Supp. at 653. The court in *United States v. Haworth*, wrote, "[i]f a defendant elects to present evidence of his mental condition as a reason why he should not be sentenced to death, the Government must be able .to follow where he has led and introduce its own countervailing evidence." 942 F.Supp. at 1408 (internal quotations and citations omitted). Unless the Government is allowed to conduct its own mental health examination, it may be deprived of "the only effective means it has of controverting... proof on an issue that [the defendant has chosen to] interject... into the case." *Estelle v. Smith*, 451 U.S. 454, 465, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981). In defendant Edelin's case, meaningful discovery could only be notice of the defendant's intent to present mental health information at sentencing, discovery of the defense expert witness reports, and the examination of the defendant by the Government's mental health experts.

The Court finds that some information must be provided to the Government's expert witnesses or the resulting testimony will be meaningless or misleading. As the district court in *United States v. Haworth*

explained: "Psychiatry is far from an exact science because it does not rely primarily on the analysis of raw data. Instead, the basic tool of psychiatric study remains the personal interview ...." *United States v. Haworth*, 942 F.Supp. 1406, 1407–08 (D.N.M.1996). The Fourth Circuit has also recognized the importance of an examination by Government experts in a case where the defendant sought to present an insanity defense:

> Not only to enable the government to carry its full load, but also to respect the inviolability of the human personality, the [mental] examination [of the defendant by government experts] here was indicated.... [T]he government, to meet its burden of proof, would have access to only three kinds of proof: cross-examination of defendant's experts, lay testimony, and testimony of government experts predicated upon courtroom observations and hypothetical questions. Medical science ... deems these poor and unsatisfactory substitutes for. testimony based upon prolonged and intimate interviews between the psychiatrist and the defendant. Half truths derived from these unsatisfactory substitutes do more to violate human personality than full disclosure, especially because there is always the possibility that the psychiatrist who examines for the government and thus has full knowledge of a defendant, may corroborate his contention that he is legally insane.

*United States v. Albright*, 388 F.2d at 724–25 (internal citations and quotations omitted). *United States v. Albright* predates Rule 12.2 of the Federal Rules of Criminal Procedure, but the underlying ruling of the case, that courts have the authority to require notice of mental health defenses and to order mental health examinations, was reaffirmed by the Fourth Circuit after the promulgation of Rule 12.2. *See, e.g.*

*Gibson v. Zahradnick*, 581 F.2d 75, 78 (4th Cir.1978), *cert. denied*, 439 U.S. 996, 99 S.Ct. 597, 58 L.Ed.2d 669 (1978); *United States v. Lewis*, 53 F.3d 29 (4th Cir.1995).

In light of the enhanced accuracy provided by an examination of the defendant rather than a simple observation of the defendant in the courtroom or the analysis of documents that relate to the mental health of the defendant, the Court finds that it is necessary to allow the Government's expert witnesses to examine the defendant. If no examination were permitted, and no notice were required, the Government's ability to rebut information presented by the defendant "would be sharply curtailed, if not entirely eviscerated . . . ." *United States v. Beckford*, 962 F.Supp. 748, 758 (E.D.Va.1997).

The district court in *United States v. Vest*, 905 F.Supp. 651 (W.D.Mo.1995) came to a similar conclusion. The *Vest* court based its decision on the idea that "the provision authorizing rebuttal is rendered meaningless," without notice of mental health defenses, access to defense expert reports, and examination of the defendant by Government experts. *Id.* at 653. The *Vest* court further observed that although Federal Rule of Criminal Procedure 12 .2(b) does not apply to the sentencing phase of a trial, the use of the guilt phase provisions of Rule 12.2(b) during the sentencing phase of the trial "would serve the dual purposes of promoting efficient and fair resolution of the issues at hand while preserving the defendants' Constitutional rights." *Id.* at 652. Although Federal Rule of Criminal Procedure 12.2(c) does not apply to this case, the Court finds this to be "an appropriate case" for a court ordered mental health examination of the defendant.

The defendant cannot circumvent the statutory procedures established in 21 U.S.C. § 848 and deprive the Government of information regarding the mental health of the defendant while the defendant puts his mental health at issue in the mitigation stage of sentencing. If the Court were to prohibit the Government's mental health examination of the defendant, the Government's ability to rebut information provided by the defendant would be severely curtailed; this could be true even if the defense experts had not examined the defendant. In order to allow the jury to come to a better understanding of the aggravating and mitigating factors to be presented at trial, both sides should have access to information regarding the defendant's mental health. The Government's experts should have the ability to examine the defendant prior to the trial so long as the defendant intends to present evidence or testimony regarding his mental health as a mitigating factor at sentencing.

C) *Reciprocal Discovery Requests, Protection of the Defendant's Interests*

■ The defendant argues that the Government's Motion would lead to unbalanced discovery. *See Defendant's Opposition* 6–7. In order to insure that discovery related to the sentencing phase of the trial is not unbalanced, the Court finds that the Government shall provide a proffer of the evidence it intends to offer on the aggravating factors it will seek to prove at sentencing.[12] The proffer shall be provided to

---

12. The ordered proffer of evidence used to support aggravating factors is in addition to the Government's Notice of aggravating factors, previously filed with the Court. In a prior Memorandum and Order in this case, filed January 23, 2001, the Court rejected a claim by defendant Edelin that the Government's notice of aggravating factors was insufficient. The Court here recognizes the legal sufficiency of the prior notice filed by the Government, but finds that the interests of the Court to a fair resolution of this trial are better served by the Government filing a proffer of evidence.

the defendant when the jury begins deliberations regarding the guilt or innocence of the defendants. The information included in the Government's proffer will allow the defense to carefully weight the desirability of presenting mental health information during sentencing.

■ The Court also seeks to maintain balanced discovery in evaluating the Government's request for disclosure of the reports of the defense mental health experts. While the Government is entitled to review the reports, the information in those reports should not be disclosed to the Government prior to the termination of the guilt phase of the trial. *See United States v. Beckford,* 962 F.Supp. 748 (E.D.Va.1997); *United States v. Haworth,* 942 F.Supp. 1406 (D.N.M.1996); *United States v. Vest,* 905 F.Supp. 651 (W.D.Mo. 1995); *Commonwealth v. Sartin,* 561 Pa. 522, 751 A.2d 1140 (2000). In order to rebut the information provided by the defense expert witnesses, the Government must have access to the reports of the defendant's mental health experts. Without the ability to review those reports, the Government would not have a reasonable opportunity to challenge the accuracy of the conclusions reached by the defense experts. The disclosure of the contents of the defendant's expert witness reports is necessary to the Government's ability to rebut the information presented by the defendant at sentencing.

The Fifth Amendment to the Constitution would prohibit the guilt phase use of information gathered during a mental health examination of the defendant by the Government's expert witnesses. The Court concludes, therefore, that Government counsel will not have access to the report of the Government's mental health experts, nor to any information that was gleaned from any examinations of the defendant, until after the guilt phase of the trial. At that point, if the defendant still plans to present mental health evidence at the sentencing, the Government's expert reports will be unsealed, as will any report by the defendant's expert mental health witnesses.

While the defendant must provide the Government with the defense expert reports, the Court limits further discovery by the Government. To the extent that the Government requests disclosure of information that is not included in a report filed by the defendant's expert witnesses, the Court finds that the discovery should not be granted.[13] While the defense experts' reports will necessarily include the nature of the proffered mental condition and its onset, the summary of the defense mental health expert opinions and diagnoses, and a summary of the basis for those opinions and diagnoses, none of this information need be provided to the Government before the verdict in the guilt phase of trial.[14] The Court's decision to seal the expert witness reports of the Government and the defense is based on a desire to protect the Fifth and Sixth Amendment rights of the defendant; namely, the rights of the defendant to not incriminate himself, and to effective assistance of counsel.

The Government goes too far in seeking information regarding the defendant's

---

**13.** Much of the information requested by the Government must necessarily be included in the defense mental health experts' reports, as addressed by the Court *infra* Sections 7–8. While the information in the experts' reports will eventually be disclosed to the Government, that would only occur after the completion of the guilt phase of the trial and under the conditions specified by the Court in this Memorandum and Order.

**14.** This is accurate to the extent that it does not conflict with Section 3·of the Court's Order. *See infra* p. 57.

mental health, and attempts to pierce the sphere of information that should remain in the hands of the defense until after the verdict in the guilt phase of trial. The Government has not provided the Court with a single case where a trial court granted such a request for advance evidence of the nature of the proffered mental condition or defect. This information need not be disclosed to the Government at this time. Government counsel shall be prohibited from learning the results of the Government's mental health examination of the defendant until after the guilt phase of the trial has terminated, and then only if the defendant provides subsequent notice that he will be presenting mental health information at sentencing.

### D) *Possible Continuance Before the Penalty Phase of Trial*

█ The Court anticipates that the trial in this case will last approximately five months. The jury, by prior order of this Court, filed January 23, 2001, will be anonymous and will gather at a secure location before being brought to the courthouse each day. The jurors will remain in the presence of a United States Marshal during all lunch recesses. The restrictions on the jurors, brought about by the Court's finding of dangerousness of the defendants and their willingness to interfere with the judicial process, will necessarily make their service an arduous one. The Court, in addressing the Government's Motion, seeks to safeguard the rights of the defendant while attempting to limit the burden placed on the jury at the time of trial.

The Court, in light of the anticipated length of the trial in this case and the anonymity of the jury, finds that the pressures on the jury would be greater in this case than in other criminal cases. The

defendant argues that the best method of balancing the Government's right to examine the mental health of the defendant and the Fifth Amendment rights of the defendant would be to wait until the guilt phase of the trial is complete, and then grant a continuance for the Government to examine the defendant if the defendant intends to produce mental health information at sentencing. The defendant asserts that this procedure would allow him to effectively evaluate the case against him, and if he is convicted, provide him with more information as to what mitigating factors he should raise at the sentencing phase of trial.

Defendant Edelin's Opposition to the Government's Motion is weakened by the fact that the Supreme Court in *Estelle v. Smith* and *Buchanan v. Kentucky* did not indicate that the Fifth and Sixth Amendment rights of a criminal defendant are infringed by a requirement that the defendant provide notice to the Government of his intent to present mental health information at trial. *See Estelle*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981); *Buchanan*, 483 U.S. 402, 107 S.Ct. 2906, 97 L.Ed.2d 336 (1987). Indeed, a nearly identical notice provision in Rule 12.2 of the Federal Rules of Criminal Procedure, has not been found to violate the Constitutional rights of a criminal defendant.[15] Defendant Edelin, in arguing against mandatory notice of intent to produce mental health information at sentencing, fails to recognize that if he provides notice, he may later change his mind and decide not to present mental health information to support mitigation factors at sentencing. As long as he provides notice to the Government that he intends to raise mental

---

**15.** While Federal Rule of Criminal Procedure 12.2 applies to the guilt phase of trial, see *supra* p. 47, the notice provision of Rule 12.2 is nearly identical to the notice proposed here for the penalty phase of trial.

health issues at sentencing, he may later revisit the decision.

If, after evaluating the evidence presented against him during the guilt phase determination of trial, the defendant finds that it would not be in his best interests to present mental health information or testimony during sentencing, he would not be required to do so, despite any prior notice to the contrary. In that case, the mental health information under seal would not be disclosed to the Government. All the defendant is required to decide prior to the notice deadline mandated by the Court is whether he currently finds that mental health information would be helpful to his case. If he plans on using mental health information at sentencing, he must provide notice to the Government prior to the date specified by the Court.

Although the defendant might feel more comfortable delaying the decision of what mental health information he should bring at the sentencing phase of trial, the alternative he presents to the Court is not an attractive one. A continuance in the trial between the guilt and sentencing phases of trial, after months of guilt phase proceedings, would be detrimental to the jury and to the judicial process. The burden on the jury of a lengthy delay between the guilt and sentencing phases would be severe. The evidence from the guilt phase, which is usually adopted at sentencing, would fade from the minds of the jurors, requiring the parties to resubmit information previously provided to the jury. The context of the evidence would be disrupted, confusing the jury. This would prejudice the Government and the defendant alike. While the defendant does not appear to be concerned with the degradation of the information from the guilt phase in the minds of the jury, the Court is concerned that a delay would require lengthy presentations of information to refresh the recollection of the jury, and would possibly result in an inaccurate sentencing determination.

Other jury related considerations include the increased likelihood of some accident or other circumstance that may require individual jurors to leave the jury panel. Any added delay during trial only tempts fate to cause some misfortune to jurors, thereby decreasing the size of the panel. A loss of even one juror after the guilt determination would be a threat to the viability of the sentencing procedure.

As an alternative to burdening one jury with the guilt and sentencing phases of trial, the defendant is not opposed to empaneling a separate jury for sentencing. The defendant has previously requested empaneling separate juries for the guilt and sentencing phases of the trial. This Court has denied the defendant's motion for separate juries. *See United States v. Edelin,* 118 F.Supp.2d 36, 49 (D.D.C.2000). Aside from other considerations related to the severance of the sentencing phase of trial, the relevant statute, 21 U.S.C. § 848(i)(1), restricts the use of separate juries for sentencing. The statute provides that where a jury determines the guilt of the defendant, any subsequent capital sentencing hearing shall be conducted before the same jury, unless that jury has been discharged "for good cause." 21 U.S.C. § 848(i)(1)(A), (i)(1)(B)(iii). The Court does not anticipate finding good cause to dismiss jurors who have observed presentations of all of the evidence gathered by the Government and the defense in this case.

The Court's prior decision in this case not to sever the defendants or the sentencing phase of trial was based on the idea that the jury would be able to make a more accurate determination regarding the guilt or innocence of each defendant if all of the evidence regarding each of the de-

fendants was provided before the same jury. The same rationale applies to the sentencing phase of trial. The Court finds that a continuance would unnecessarily jeopardize the ability of the jury to place the information provided at sentencing into proper context. The inability of the jury to properly understand the information provided to it at sentencing would undermine the accuracy of its decision, harming the interests of the Government and the defendant.

*IV. Conclusion*

The interests of the defendant in a fair and expeditious trial, combined with the Court's interest in the just resolution of this matter, are best served by the decision of this Court, delineated below. The concerns of the Court, with regard to the length of the trial and the sentencing, influence the Court to find that justice would not be served by a continuance between the guilt and sentencing phases of trial. The procedure for placing the defendant's mental health examination results under seal until the guilt phase has terminated protects the defendant's rights under the Fifth Amendment to the United States Constitution. The defendant's Sixth Amendment rights are protected by other mechanisms, described below.

It is therefore ORDERED that:

1) Defendant Tommy Edelin, as of February 23, 2001, shall give notice to the Government if he intends to introduce evidence or testimony regarding his mental health at any phase of the trial; defendant Edelin has already indicated that he will provide some mental health evidence at sentencing, he should inform the Government as to his current intentions.

2) If defendant Tommy Edelin intends to introduce evidence or testimony at the guilt phase to show insanity, his use of mental health evidence would be governed by 18 U.S.C. § 4242, Rule 16 and Rule 12.2 of the Federal Rules of Criminal Procedure.

3) If defendant Edelin provides notice that he will produce mental health information at sentencing, the notice must include the identities and qualifications of the mental health experts who will testify or whose opinions will be relied upon, and a brief, general summary of the information the experts will provide. The summary should be sufficiently explicit to allow the Government to find potential mental health expert witnesses in the same field.

4) If any of the evidence or testimony that defendant Edelin seeks to introduce at sentencing is based upon an examination of the defendant by the defense mental health experts, defendant Edelin and the Government shall endeavor to come to an agreement as to the designation of specific testing measures to be administered by the defense and prosecution expert witnesses, to avoid test overlap and to limit the "practice effects" feared by the Government. The defense and the Government shall also consider sharing data between the experts so that multiple administrations of the same test in a short period of time can be avoided.

5) Defendant Edelin, if he is to present any mental health evidence or testimony at sentencing, shall submit to examination(s) by an expert or experts of the Government's choosing.

6) All defense and Government reports shall be submitted to the Court prior to March 26, 2001, the day that jury selection begins in this case.

7) Any report or opinions generated by an examination of the defendant by a Government expert witness shall be filed under seal with the Court and not discussed with Government counsel or the defense

until after the guilt phase of trial. Any report by the defense expert witnesses, although provided to the defense, would remain under seal with the Court and would only be submitted to the Government after the guilt phase of trial had terminated.

8) Defendant Edelin is not required to provide the Government with any of the materials supplied to the defense experts other than defendant Edelin's medical records. The defendant is not required to disclose, other than to the extent that this information is included in the defense expert reports, the nature of the proffered mental condition or defect and the date of its onset, or to provide a summary of the diagnosis or diagnoses of said mental health experts and a summary of the basis for their opinions, other than what is specified above in section 3 *supra*. Much, if not all, of the information requested by the Government must necessarily be included in the experts' reports, and will be disclosed in the eventuality that the experts' reports are unsealed.

9) The Government shall provide a proffer of the evidence it intends to offer on the aggravating factors it will seek to prove at sentencing. The proffer will be made at the time the jury begins deliberations regarding the guilt or innocence of the defendants.

10) The defendant shall give additional notice, within two days of a return of a guilty verdict on one of the capital counts, of whether he will in fact produce mental health information at his sentencing. If he gives notice of continued intent to produce mental health information at sentencing, the sealed expert reports will be unsealed at that time. If the defendant decides not to produce mental health information at sentencing, the information regarding the mental health of the defendant will remain sealed.

11) If defendant Edelin presents mental health information at the sentencing stage, the Government may only use the information gathered during the examination of defendant Edelin on issues respecting mental condition on which the defendant has introduced testimony.

12) Defendant Edelin shall not be required to videotape, record, or otherwise memorialize the testing done by his expert mental health witnesses. The Government has not provided the Court with any legal authority for its request to videotape the defense mental health examination, and the Court DENIES the Government's request for a recording of the defense examination.

13) If the defendant fails to provide notice or fails to participate in a mental examination as ordered by the Court, the defendant may forfeit his right to introduce evidence of his mental condition at the penalty phase of trial.

SO ORDERED.