**UNITED STATES of America**

v.

**Donald FELL**

**No. 2:01CR1201.**

United States District Court,
D. Vermont.

April 7, 2005.

Wiliam B. Darrow, AUSA and Stephen D. Kelley, AUSA, for plaintiff.

Alexander Bunin, Burlington, VT, Gene Primomo, Paul Volk, Burlington, VT, for defendant.

## OPINION AND ORDER

SESSIONS, Chief Judge.

Donald Fell was indicted on four counts arising out of the abduction and murder of Teresca King in late November 2000. Counts 1 and 2 charge Fell with carjacking and kidnapping, both with death resulting. These two counts are charged as capital crimes. This Opinion and Order explains the decision of the Court on three outstanding issues. First, the Court considers, and rejects, Fell's remaining challenges to the constitutionality of the Federal Death Penalty Act (FDPA). Second, the Court examines the government's Motion for Discovery of Mental Health Evidence (Doc. 34). That motion is granted in part and denied in part. Finally, the Court denies Fell's Motion to Dismiss Non–Statutory Aggravating Factors (Doc. 81).

## I. The Constitutionality of the FDPA

### A. Fell's Original Motion

On May 28, 2002, Fell filed a motion to declare the federal death penalty unconstitutional (Doc. 44). In that motion, Fell raised twelve different challenges to the FDPA. These were: (1) it fails to avoid sentences of death for the factually and legally innocent; (2) the FDPA's sentencing scheme is incomprehensible to a jury, in violation of the Fifth and Sixth Amendments; (3) the FDPA fails to narrow adequately the class of persons eligible for the death penalty, in violation of the Eighth Amendment; (4) the relaxed evidentiary standard applicable to the penalty phase of trial renders any findings unconstitutional; (5) the indictment fails to charge a capital crime; (6) a jury's consideration of non-statutory aggravating factors permits the arbitrary and capricious imposition of a sentence of death, in violation of the Eighth and Fourteenth Amendments; (7) the FDPA's delegation to the government of the power to define aggravating factors violates separation of powers principles and the non-delegation doctrine, in violation of Article I, § 1; (8) its delegation to the government of the power to define non-statutory aggravating factors after the crime but before trial violates the ex post facto clause; (9) the FDPA is internally inconsistent, precluding the use of non-statutory aggravating factors; (10) the use of non-statutory aggravating factors without providing for proportionality review is unconstitutional; (11) the death penalty is under all circumstances cruel and unusual punishment in violation of the Eighth Amendment; and (12) the death penalty violates binding international law.

On September 24, 2002, the Court considered the fourth and fifth of these arguments. The Court denied Fell's claim that the FDPA violated his Fifth Amendment right to grand jury indictment. *United States v. Fell*, 217 F.Supp.2d 469, 483–84 (D.Vt.2002) (*"Fell I"*). However, the Court granted Fell's motion on the ground that "the FDPA's § 3593(c)'s direction to ignore the rules of evidence when considering information relevant to death penalty eligibility is a violation of the Due Process Clause of the Fifth Amendment and the rights of confrontation and cross-examination guaranteed by the Sixth Amendment." *Id.* at 473. This decision was overruled by the Second Circuit. *United States v. Fell*, 360 F.3d 135 (2d Cir.2004) (*"Fell II"*). As a result, the Court must address the other ten challenges raised in Fell's original motion.

This Court has carefully reviewed Fell's memorandum of law and the government's opposition. The Court is satisfied that, in light of current Supreme Court authority, none of Fell's remaining arguments have merit. Moreover, all of Fell's contentions have been considered and rejected by a

large number of federal courts. Thus, the Court does not need to repeat the detailed analysis that is already found in other decisions.

Fell's first argument, that the FDPA fails to avoid sentences of death for the factually and legally innocent, raises a fundamental challenge to the legality of the death penalty under the Due Process Clause of the Fifth Amendment. The argument raises profound questions about the finality of the death penalty in a system of justice that, like any human endeavor, is less than perfect. Nevertheless, Fell's challenge has been squarely rejected by the Second Circuit. *See United States v. Quinones,* 313 F.3d 49 (2d Cir.2002).

Fell's second argument is that the FDPA's sentencing scheme is incomprehensible to a jury. This claim is well analyzed, and rejected, by Judge Pollack in *United States v. Llera Plaza,* 179 F.Supp.2d 444, 449–50 (E.D.Pa.2001). *See also United States v. Perez,* No. 3:02CR7, 2004 WL 935260, at *2–*3 (D.Conn. Apr.29, 2004). The Court adopts Judge Pollack's reasoning. Fell's third argument, that the FDPA fails to narrow adequately the class of persons eligible for the death penalty, has also been considered and rejected on many occasions. *See, e.g., United States v. Quinones,* No. 00 CR.761, 2004 WL 1234044, at *2 (S.D.N.Y. June 3, 2004); *Perez,* 2004 WL 935260, at *4–*5; *Llera Plaza,* 179 F.Supp.2d at 451–52. As these decisions explain, this challenge is precluded by settled Supreme Court authority. *See Lowenfield v. Phelps,* 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988).

Fell presents five arguments (numbered six through ten above) contesting the legality of the use of non-statutory aggravating factors under the FDPA. Once again, these arguments have been considered in detail and rejected by many other federal courts. *See, e.g., Quinones,* 2004 WL 1234044, at *2; *Perez,* 2004 WL 935260, at *11–*16; *Llera Plaza,* 179 F.Supp.2d at 453–59 (E.D.Pa.2001); *United States v. Frank,* 8 F.Supp.2d 253, 267 (S.D.N.Y. 1998); *United States v. Nguyen,* 928 F.Supp. 1525, 1536–38 (D.Kan.1996); *United States v. Pitera,* 795 F.Supp. 546, 562 (E.D.N.Y.1992). Upon review of these decisions, and the Supreme Court authority on which they are based, the Court is satisfied that the FDPA is internally consistent and that the use of non-statutory aggravating factors is constitutional.

Fell's final two arguments are also contrary to settled precedent and are likely presented solely to preserve the issues for eventual Supreme Court review. *See, e.g., Quinones,* 2004 WL 1234044, at *2. Thus, the Court must deny Fell's Motion to Declare Federal Death Penalty Unconstitutional (Doc. 44).

## B. Fell's Supplemental Motion

In addition to the issues discussed above, the Court must address three new challenges to the constitutionality of the death penalty. In his supplemental motion (Doc. 80), Fell argues that (1) that *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) upset the basis for the Second Circuit's decision in *Fell II;* (2) the FDPA's bifurcated guilt and penalty phases violate the presumption of innocence; and (3) the FDPA is unconstitutional for allowing the introduction of character and victim impact evidence to prove elements of capital murder.

In *Crawford,* the Supreme Court held that out-of-court statements by witnesses that are testimonial are barred, under the Confrontation Clause, unless witnesses are unavailable and the defendant had prior opportunity to cross-examine witnesses. 541 U.S. at 68, 124 S.Ct. at 1374. The *Crawford* Court overruled *Ohio v. Roberts,*

448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), which held that the Confrontation Clause does not bar admission of an unavailable witness's statement if the statement bears adequate indicia of reliability.

The FDPA provides that during the sentencing phase evidence "is admissible regardless of its admissibility under the [Federal Rules of Evidence] except that information may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury." 18 U.S.C. § 3593(c). Fell suggests that this is inconsistent with *Crawford* because it directs the judge to determine admissibility on the basis of reliability. Essentially, Fell's position is that the FDPA mandates the *Roberts* approach rather than the *Crawford* approach to out-of-court testimonial statements.

■ Fell's argument is squarely addressed by *Fell II*. In that opinion, the Second Circuit specifically noted that, "the FDPA does not alter a district court's inherent obligation to exclude evidence the admission of which would violate a defendant's Constitutional Rights." *Fell II*, 360 F.3d at 138. The court stated:

> [A]s was true before the FRE were promulgated in 1972 and is true under the FRE, it remains for the court, in the exercise of its judgment and discretion, to ensure that unconstitutional evidence otherwise admissible under applicable evidentiary rules is excluded from trial. *The FDPA does not eliminate this function of the judge as gatekeeper of constitutionally permissible evidence;* nor does it alter or eliminate the constitutional baseline for the admissibility of evidence in a criminal trial.

*Id.* at 145 (quotation marks and citation omitted) (emphasis added). Thus, the FDPA does not prevent a district court from applying *Crawford* at the sentencing phase of the trial. In fact, the district court must ensure that the defendant's constitutional rights are not violated under *Crawford*.

Fell's other evidence-based argument has the same defect. Fell claims that the FDPA is unconstitutional under the Due Process Clause because it allows the introduction of evidence of character, propensity, prior uncharged conduct, and victim impact to prove elements of capital murder. However, as noted above, the district court retains the authority, and the responsibility, to ensure that only constitutionally permissible evidence is admitted.

Fell's remaining claim is that the FDPA's bifurcated procedure violates the presumption of innocence. The FDPA bifurcates the guilt and the penalty phases of the capital trial, requiring findings about the defendant's mental state and the statutory aggravating factors to be made at a "separate sentencing hearing." 18 U.S.C. § 3593(b). Under *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), any sentencing factor that increases the maximum penalty for an offense from life in prison to death must be found by a jury beyond a reasonable doubt. The FDPA's sentencing phase satisfies these requirements. *See* 18 U.S.C. § 3593.

Fell argues that once the jury has deliberated and found him guilty at the guilt phase, the jury will no longer presume him innocent. According to Fell, this means that FDPA conflicts with *Ring* because, at the sentencing phase, the jury will be unable to apply the constitutionally required reasonable doubt standard to the mental state and aggravating factors.

■ Fell's argument faces two significant hurdles. First, it is undermined by the fact that the Supreme Court has long favored bifurcated proceedings in capital

cases. *See, e.g., Gregg v. Georgia,* 428 U.S. 153, 191–93, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). As the government notes, this protects the defendant at the guilt phase from aggravating sentencing evidence, such as victim impact evidence. Second, the argument runs counter to the strong presumption that juries will follow their instructions. *See, e.g., Marshall v. Lonberger,* 459 U.S. 422, 438 n. 6, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983).

Fell's concerns about the presumption of innocence can be adequately addressed by appropriate jury instructions. If there is a sentencing phase, the jury must be carefully instructed about the government's burden of proof with respect to the mental state and aggravating factors. Fell's argument amounts to no more than bare speculation that the jury will be unable to follow these instructions. However, there is no reason to conclude that the jury will be incapable of understanding the burden of proof instructions at the sentencing phase.[1] Thus, Fell's argument must be rejected.

## II. Mental Health Evidence

The government filed a Motion for Discovery of Mental Health Evidence (Doc. 34) on February 13, 2002 in which it sought an order requiring Fell to provide copies of his medical records to the government and to submit to a mental health examination to be conducted by government experts. Soon thereafter, the defense provided to the government the reports of its experts and voluntarily agreed to permit experts selected by the government to conduct such a mental health examination, focusing in particular upon aggravating and mitigating circumstances present, albeit with some restrictions upon the areas of inquiry. Those restrictions were particularly appropriate, because in the absence of Fed.R.Crim.P. 12.2(c), Fell's statements to the experts could be used as evidence against him at trial. Fell filed Rule 12.2(b) Notice of Expert Evidence of a Mental Condition (Doc. 74) on December 1, 2004 giving notice that if convicted of a capital crime, he will introduce expert evidence about his mental condition at the penalty phase of the litigation. The government seeks a Court-ordered examination of the defendant pursuant to Rule 12.2(c)(1)(B). For the reasons that follow, the government's motion requiring Fell to submit to an examination by a government mental health expert is granted in part and denied in part.

## A. Background

Early in these proceedings, it became clear to both the government and the defense that mental health issues would be highly relevant during a potential penalty phase of the trial. Fell retained three experts to conduct mental health evaluations in 2001, Mark J. Mills, M.D., Jonathan Lipman, Ph.D. and Wilfred G. Van Gorp, Ph.D. Those experts rendered opinions regarding aggravating and/or mitigating circumstances which were shared with the government. The government sought an opportunity to have its own experts examine Fell to assess defenses to claims of mitigating factors present in the case in its Motion for Discovery of Mental Health Evidence. The parties en-

---

1. The only other court to consider this issue reached the same result. Judge Aterton concluded that "[b]ecause the jury will not have deliberated about the aggravating factors at the liability phase, the loss of the presumption of innocence about the elements of underlying offense that occurs once the jury reaches a decision on guilt need not inexorably transfer to the jury's later consideration of aggravating factors, particularly when the jury is properly instructed about the burden of proof at the penalty phase." *Perez,* 2004 WL 935260, at *19.

tered into an agreement whereby the government could have its own experts evaluate Fell, subject to restrictions upon the areas of inquiry stemming out of Fifth Amendment concerns. The government selected two experts, Dr. Richard Wetzel, Ph.D and Dr. John Rabun, M.D., to conduct these interviews with Fell, subject to the conditions that the interviews were in the presence of defense counsel and could not involve questions about the murders, his mental state during the alleged offense and his use of a knife. To this date, no government mental health expert has been permitted to conduct a mental health examination of Fell without restrictions on access and subject matter.

In early 2004, the government retained psychiatrist Michael Welner, M.D. Dr. Welner has reviewed written materials about the case and has met with government counsel. Unlike other government experts in this case, he has not interviewed Fell, nor assessed the presence or absence of aggravating or mitigating circumstances. He has also not interviewed Fell about his state of mind during the murders. The government now requests an unrestricted interview of Fell by one or more of its experts, preferably by Dr. Welner.[2]

**B. Discussion**

Fell's Fed.R.Crim.P. 12.2 notice indicates that he will rely upon expert evidence of a mental condition as a mitigating factor during the penalty phase of the litigation. Rule 12.2(b) provides that if a defendant seeks to introduce expert evidence relating to a mental disease, defect or any other mental condition bearing on the issue of punishment in a capital case,

the defendant must provide notice to the court and notify an attorney for the government. Fed.R.Crim.P. 12.2(b)(2). The FDPA permits the government "to rebut any information received at the [sentencing hearing], and shall be given a fair opportunity to present argument as to the adequacy of the information to establish the existence of any ... mitigating factor." 18 U.S.C. § 3593(c). The right to offer rebuttal testimony to mitigating circumstances proffered by the defense would be a hollow one indeed without discovery into the mental condition of an accused at the time of commission of the offense. "If the defendant provides notice under Rule 12.2(b), the court may, upon the government's motion, order the defendant to be examined under procedures ordered by the court." Fed.R.Crim.P. 12.2(c)(1)(B). A defendant's statements to mental health experts are admissible only "on an issue regarding mental condition on which the defendant... (B) has introduced expert evidence in a capital sentencing proceeding requiring notice under Rule 12.2(b)(2)." Fed.R.Crim.P. 12.2(c)(4)(B).

Rule 12.2(c)(1)(B) provides the court with the authority, in its discretion, to order mental examinations in capital cases at the request of the government when the defense provides notice of an intention to rely upon expert mental health testimony to prove mitigating factors. *See United States v. Johnson*, 362 F.Supp.2d 1043, 1082–83 (N.D.Iowa 2005). Even prior to changes to Rule 12.2(c) in 2002 giving the court the option to order notice, discovery and mental health examinations in these cases, courts have exercised their discretion and ordered capital defendants who plan to rely upon mental health informa-

**2.** In its Supplemental Memorandum in Support of government's Motion for Discovery of Mental Health Evidence (Doc. 77), the government notes that "[f]airness and justice to both parties dictate that at least one government mental health expert be allowed to question Fell about the murders."

tion to submit to mental health examinations by experts retained by the government. *See United States v. Edelin,* 134 F.Supp.2d 45, 48–50 (D.D.C.2001); *United States v. Beckford,* 962 F.Supp. 748, 763 (E.D.Va.1997).

Fell raises Fifth and Sixth Amendment concerns regarding a court-ordered mental health examination. "The Court, however, must be cognizant of the defendant's Fifth and Sixth Amendment rights in considering a Motion for a mental health examination of the defendant." *Edelin,* 134 F.Supp.2d at 49. Those constitutional concerns can be addressed by establishing procedures for the examinations which prevent premature disclosure of defendant's statements and the results of the examination during the guilt phase of the trial.[3] Generally, a defendant cannot present testimony concerning his mental condition and then refuse, on Fifth Amendment grounds, to answer questions put to him by the government's expert. *See* Fed. R.Crim.P. 12.2(d). Pursuant to that same theory, courts have consistently held that a defendant's Fifth Amendment rights are not violated by a court ordered mental health examination when the defendant has provided notice of intent to produce mental health expert testimony in support of a mitigating factor at sentencing. *Edelin,* 134 F.Supp.2d at 49; *see also United States v. Webster,* 162 F.3d 308, 340 (5th Cir.1998); *Beckford,* 962 F.Supp. at 760; *United States v. Vest,* 905 F.Supp. 651, 653 (W.D.Mo.1995). In other words, an inde-

pendent examination by a government mental health expert does not violate the defendant's Fifth Amendment rights against self-incrimination. *Edelin,* 134 F.Supp.2d at 49. Moreover, to protect a defendant's Fifth and Sixth Amendment rights, the results of the examination are sealed pending conviction at the guilt phase. Fed.R.Crim.P. 12.2(c)(2)-(3).

Based upon Rule 12.2 and the relevant case law, the Court recognizes that the government may be entitled to an independent examination by a mental health expert. In this case, Fell has given notice that he intends to offer expert testimony relating to a mental disease or defect constituting a mitigating circumstance. He has not identified the mitigating factors upon which he relies, nor does he have any obligation to do so. The death penalty statute provides three mitigating factors which relate directly to the defendant's mental condition at the time of the offense. *See* 18 U.S.C. § 3592(a)(1) ("[t]he defendant's capacity to appreciate the wrongfulness of the defendant's conduct or to conform conduct to the requirements of the law was significantly impaired, regardless of whether the capacity was so impaired as to constitute a defense to the charge"); 18 U.S.C. § 3592(a)(2) ("[t]he defendant was under unusual and substantial duress, regardless of whether the duress was of such a degree as to constitute a defense to the charge"); 18 U.S.C. § 3592(a)(6) ("[t]he defendant committed the offense under se-

---

**3.** *Beckford* provides that there needs to be a balance between securing a defendant's Fifth Amendment Rights and affording the government a meaningful right of rebuttal regarding mental health issues. The balance is best struck by:

(1) requiring reasonably early notice by the defendants that they intend to rely on mental health or mental conditions in mitigation of death in the penalty phase; (2) requiring an examination within a reasonable

time thereafter; and (3) deferring the release to the Government of the Government's expert reports and the defense expert reports until after a finding of guilt necessitates a decision by the defendants on how to proceed with the penalty phase. In this way, the defendant's rights are preserved, and the Government's rebuttal right is secured.

*Beckford,* 962 F.Supp. at 761.

vere mental or emotional disturbance"). 18 U.S.C. § 3592(a)(8) also permits presentation of factors in the defendant's background or character which contribute in any way to mitigating circumstances. Moreover, in light of the restrictions in the discovery and use by the government of statements made by the defendant during the examination under Rule 12.2(b)-(c), an examination by a government mental health expert would not violate Fell's Fifth and Sixth Amendment rights. Thus, the government has the right to rebut any expert testimony presented by the defense as to those mitigating factors. The examination should include an assessment of general mitigating circumstances, as has been done by Drs. Wetzel and Rabun, but also an evaluation of the defendant's mental state at the time of the alleged offense. Accordingly, the government should be afforded the opportunity to have a mental health expert interview Fell concerning his mental condition at the time of the alleged offense.

Fell opposes an order prohibiting the presence of a defense representative during the interview of the defendant by the government's mental health expert. Absence of defense counsel implicates Fell's Fifth and Sixth Amendment rights. In *United States v. Sampson*, 335 F.Supp.2d 166 (D.Mass.2004), the court held that tape-recording the testing and interviews sufficiently protected the defendant's Fifth Amendment rights to the presence of counsel and against self-incrimination. *United States v. Sampson*, 335 F.Supp.2d 166, 247–248 (D.Mass.2004). A defendant's "Sixth Amendment right to counsel will be adequately protected by advance notice of testing and the recording of (his or) her examinations and interviews; there is no need for either defense counsel or a defense expert to be present during such testing." *Johnson*, 362 F.Supp.2d at 1091 (also suggesting that "defense counsel

must be informed of the 'nature and scope' of the 'mental health' proceedings"). The government's proposed order has provided for adequate notice of testing, tape recording of the testing and interviews and a contemporaneous audio-video feed. The Court agrees with Judge Wolf in *Sampson* that Fell's Fifth and Sixth Amendment rights would be adequately protected by implementation of these procedures. Accordingly, the government is entitled to interview Fell without defense counsel present, provided the interview is taped and counsel is afforded the option of having a simultaneous audio-video feed.

■ The final issue is who is to conduct the government's mental health evaluation. Rule 12.2 gives the Court broad discretion to outline the conditions under which the evaluation is to be conducted. As a general matter, the government should be able to select its own expert free from what could be unreasonable second-guessing by the defense or the Court. However, Rule 12.2 gives the government the ability to select one expert, not three. Both Drs. Wetzel and Rabun conducted extensive interviews of the defendant at the direction of the government at a time much closer to the relevant events. Dr. Rabun stated that "[e]ven though Mr. Fell was not questioned about the instant offenses, more than enough information was gathered from the interview and available records to allow the examiner to form opinions, within a reasonable degree of medical certainty, as to whether or not mitigation exists in this case." (Doc. 75). They explored issues of mitigating and aggravating circumstances and rendered opinions, albeit not on issues of the defendant's mental condition at the time of the alleged offense. No concerns were raised about the methodology they used in making those evaluations. Their assessments were limited only by the restrictions on the questioning.

Assuming they can now ask Fell about his mental state at relevant periods, their opinions would satisfy the dictates of Rule 12.2, while at the same time not subjecting Fell to an extensive forensic interview by a new expert at this late stage of the proceeding. It was the government who chose Drs. Wetzel and Rabun, and those experts should be permitted to complete their evaluation, subject to disclosure restrictions in the attached order.

The Court's Order on this issue incorporates the government's proposed order. The Court's Order is attached.

## III. Fell's Motion to Dismiss Non–Statutory Aggravating Factors

### A. Background

The Superseding Indictment in this case (Doc. 57) contains a "Notice of Special Findings." This notice alleges that three of the statutory aggravating factors listed in 18 U.S.C. § 3592(c) apply to Counts 1 and 2. These factors are: (1) that Fell caused the death of Teresca King during the commission of the crime of kidnapping, § 3592(c)(1); (2) that Fell's behavior was especially heinous, cruel or depraved in that it involved serious physical abuse to King, § 3592(c)(6); and (3) that Fell intentionally killed or attempted to kill more than one person in a single criminal episode, § 3592(c)(16).

On July 8, 2002, the government filed a Supplemental Notice of Intent to Seek Death Penalty (Doc. 58). This supplemental notice states that, in addition to the statutory aggravating factors, the government intends to prove four non-statutory aggravating factors. These are: (1) that Fell participated in King's abduction to facilitate his escape from the area in which he and an accomplice had committed a double murder; (2) that he participated in King's murder to prevent her from reporting the kidnapping and carjacking to au-

thorities; (3) that Fell participated in the murder of King after substantial premeditation to commit the crime of carjacking; and (4) that Fell caused extreme emotional suffering and injury to King and her family.

Fell has moved to strike the first three non-statutory factors. He presents three arguments: (1) the factors are invalid because they are not independent crimes; (2) the factors are invalid because they duplicate statutory aggravating factors or conduct charged in the indictment; and (3) the factors do not suggest more culpable conduct and are irrelevant to the imposition of the death penalty. These arguments do not correctly apply the relevant legal standards. Thus, Fell's motion must be denied.

### B. The FDPA's Penalty Phase

The FDPA establishes a bifurcated procedure. After a guilt/innocence phase there is a "separate sentencing hearing." 18 U.S.C. § 3593(b). The sentencing hearing includes a two part screening procedure that the jury must undertake before it may consider imposing the death penalty. First, in the case of a defendant who has been found guilty of an offense involving homicide, the jury must find that the defendant acted with one of four mental culpability factors, ranging from an intentional killing to intentionally engaging in violence "knowing that the act created a grave risk of death" with the victim's death as a direct result. 18 U.S.C. § 3591(a)(2)(A)-(D). The jury must find at least one of these mental culpability factors unanimously and beyond a reasonable doubt. *Id.*

If one of these mental states is found, the government must then prove beyond a reasonable doubt the existence of at least one statutory aggravating factor. 18

U.S.C. § 3593(c), (d). There are sixteen statutory aggravating factors that can be applied in a homicide case. 18 U.S.C. § 3592(c)(1)-(16). The death penalty can only be imposed if one of these factors is found to apply. 18 U.S.C. § 3593(d).

If both of the eligibility requirements are met, then the government may also present aggravating factors not listed in the statute, as long as notice is given to the defendant. 18 U.S.C. § 3592(c). These non-statutory aggravating factors must be proven by the government beyond a reasonable doubt. 18 U.S.C. § 3593(c). The defendant has the opportunity to present mitigating factors. The defendant is required to establish the existence of a mitigating factor "by a preponderance of the information". 18 U.S.C. § 3593(c). Unlike aggravating factors, mitigating factors may be found by just one or more members of the jury. 18 U.S.C. § 3593(d).

The FDPA directs that the jury "shall consider whether all the aggravating factor or factors found to exist sufficiently outweigh all the mitigating factor or factors found to exist to justify a sentence of death, or, in the absence of a mitigating factor, whether the aggravating factor or factors alone are sufficient to justify a sentence of death." 18 U.S.C. § 3593(e). The jury's sentence recommendation must be unanimous. *Id.*

### C. Legal Standards for Aggravating Factors

■ Non-statutory aggravating factors must satisfy a variety of requirements. *See generally United States v. Davis,* 912 F.Supp. 938, 943–45 (E.D.La.1996). First, the information must be "relevant," meaning that it must be "sufficiently relevant to the consideration of who should live and who should die." *Id.* at 943. Aggravating factors in death penalty cases must be "particularly relevant to the sentencing de-

cision," not merely relevant, in some generalized sense, to whether the defendant might be considered a bad person. *Gregg v. Georgia,* 428 U.S. 153, 192, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976).

Second, an aggravating factor must meet the "heightened standard of reliability" the Supreme Court has required in death penalty cases. *Ford v. Wainwright,* 477 U.S. 399, 411, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986). Thus, an aggravating factor is invalid if it cannot be established by reliable evidence. *See United States v. Gilbert,* 120 F.Supp.2d 147, 153 (D.Mass. 2000) (striking two aggravating factors that were based on stale and questionable evidence). Similarly, any aggravating factor should be excluded if it is based on evidence whose probative value is outweighed by the danger of unfair prejudice to the defendant, confusion of the issues, or a likelihood that the jury will be misled. *See* 18 U.S.C. § 3593(c).

The Constitution requires that aggravating factors not be overly broad. This means that a factor "may not apply to every defendant convicted of a murder; it must apply only to a subclass of defendants convicted of murder." *Tuilaepa v. California,* 512 U.S. 967, 972, 114 S.Ct. 2630, 129 L.Ed.2d 750 (1994) (citing *Arave v. Creech,* 507 U.S. 463, 474, 113 S.Ct. 1534, 123 L.Ed.2d 188 (1993)). The Eighth Amendment also requires that aggravating factors may not be too vague. *Id.* at 973. The vagueness review is "quite deferential" and "a factor is not unconstitutional if it has some common-sense core of meaning" that criminal juries should be able to understand. *Id.* (quotation marks and citation omitted).

District courts should also take care to ensure that aggravating factors are not duplicative. "Such double counting of aggravating factors, especially under a weighing scheme, has a tendency to skew

the weighing process and creates the risk that the death sentence will be imposed arbitrarily and thus, unconstitutionally." *United States v. McCullah,* 76 F.3d 1087, 1111 (10th Cir.1996). The Supreme Court has not passed on *McCullah*'s double counting theory. *Jones v. United States,* 527 U.S. 373, 398, 119 S.Ct. 2090, 144 L.Ed.2d 370 (1999). Although it declined to pass on this theory, the *Jones* Court did affirm that "the weighing process may be impermissibly skewed if the sentencing jury considers an invalid factor." *Id.* (citing *Stringer v. Black,* 503 U.S. 222, 232, 112 S.Ct. 1130, 117 L.Ed.2d 367 (1992)). Moreover, *McCullah*'s holding has found wide acceptance in the lower courts. *See, e.g., United States v. Tipton,* 90 F.3d 861, 899 (4th Cir.1996). The Court is persuaded that the reasoning of *McCullah* is sound and that an aggravating factor is invalid if it merely duplicates another factor. *See also United States v. Frank,* 8 F.Supp.2d 253, 276 (S.D.N.Y.1998) (holding that "duplicative aggravating factors should not be submitted to the jury").

### D. Non–Statutory Aggravating Factors Need Not be Crimes

■ Fell claims that there is an additional requirement for non-statutory aggravating factors. According to Fell, an act alleged as a non-statutory aggravator must itself be a crime. He claims that the government's proposed factors are invalid because they are not independent crimes. This argument is without merit.

The authorities cited by Fell on this issue stand only for the proposition that a non-statutory aggravating factor alleging prior misconduct must describe an independent crime. Fell relies on *Gilbert* and *United States v. Friend,* 92 F.Supp.2d 534 (E.D.Va.2000). However, Fell's reliance on these decisions is misplaced. In *Gilbert,* Judge Ponsor held that "it is clear that to

be a relevant aggravating factor in favor of the death penalty, *prior misconduct* must at least be a crime, and a grave one at that." 120 F.Supp.2d at 153 (emphasis added). The same is true of *Friend,* 92 F.Supp.2d at 544 ("the Court has found, no decision which has permitted *unadjudicated misconduct* not itself a crime to constitute a freestanding, nonstatutory aggravating factor") (emphasis added).

There is no requirement that non-statutory aggravating factors be independent crimes. No such limitation is found in the FDPA. Indeed, many of the statutory aggravators are not independent crimes. *See* 18 U.S.C. §§ 3592(c)(5)-(9), (11), (14). Thus, it is reasonable to conclude that non-statutory aggravating factors need not be independent crimes either.

### E. Non–Statutory Factor 1

The first challenged factor alleges that Fell abducted King to facilitate his escape from the area in which he and an accomplice had committed a double murder. Fell argues that this factor duplicates actions alleged as a statutory factor in the indictment. He also protests that the term "escape" is inappropriate because he was not in legal custody at the relevant time.

■ The first statutory factor in this case alleges that the death of King occurred during a kidnapping. Thus, that factor and the first non-statutory factor both relate to King's abduction. Nevertheless, the non-statutory factor does not merely duplicate the statutory factor. The non-statutory factor addresses the *motive* for the abduction.

Fell argues that motive is an invalid topic for an aggravating factor. He cites *Friend* for the proposition that establishing a motive is irrelevant to imposing the death penalty. Unsurprisingly, given the obvious link between motive and culpabili-

ty, *Friend* stands for no such thing. In *Friend,* the judge disallowed as a non-statutory factor the allegation that, after the commission of a murder, two co-defendants had discussed killing a witness. 92 F.Supp.2d at 535–36. The judge disallowed the factor because the discussion in question was not accompanied by any overt acts and, as a result, was not even a crime. *Id.* at 544–45. The judge did not hold that the motive of silencing a witness would not be relevant if the defendants had killed the witness. Thus, *Friend* provides no support for Fell's position. Moreover, it is clear from the text of the FDPA that aggravating factors may describe a motive. *See* 18 U.S.C. § 3592(c)(8) (statutory factor for "committed the offense [of homicide] as consideration for the receipt, or in the expectation of the receipt, of anything of pecuniary value").

Fell also challenges the use of the term "escape" in the first non-statutory factor. The Court finds that the term is not misleading in the overall context of the factor. While it is true that Fell was not escaping legal custody, Fell was attempting to escape capture. Thus, the factor is not impermissibly vague as it has a "common sense" meaning that a jury should be able to understand. *Tuilaepa,* 512 U.S. at 973, 114 S.Ct. 2630.

## F. Non–Statutory Factor 2

This factor alleges that Fell participated in the murder of King to prevent her from reporting the kidnapping and carjacking to authorities. Fell complains that this factor simply states a potential motive but does not describe any conduct that was not alleged in the indictment or described in other factors. Fell is correct that the factor simply states a motive. As is explained above, however, this is not a basis for striking the factor.

## G. Non–Statutory Factor 3

This factor alleges that Fell participated in the murder of King after substantial premeditation to commit the crime of carjacking. Fell argues that "substantial premeditation" can only form the basis for an aggravating factor if the substantial planning and premeditation was for a homicide. Here, in contrast, the factor alleges that the carjacking was premeditated.

Fell cites *United States v. Webster,* 162 F.3d 308 (5th Cir.1998) in support of his claim that the premeditation must be for murder. However, *Webster*'s holding was clearly limited to the *statutory* aggravating factor described by 18 U.S.C. § 3592(c)(9). *See Webster,* 162 F.3d at 325. The court's holding was based on the statutory language of § 3592(c)(9) which specifies that the "defendant committed the offense after substantial planning and premeditation *to cause the death of a person." Id.* Thus, *Webster* does not place a limit on non-statutory aggravating factors. Similarly, the other case cited by Fell also concerns only the scope of a the statutory aggravating factor described by § 3592(c)(9). *See United States v. Chanthadara,* 230 F.3d 1237, 1264 (10th Cir. 2000).

Fell also contests the relevance of this factor. He claims that whether a carjacking is planned or spontaneous is irrelevant to a subsequent murder and adds no claim of greater moral culpability. This is incorrect. Whether or not the carjacking was planned is relevant to Fell's culpability for the overall criminal episode. The government alleges that the carjacking led directly to King's death. As such, it was not simply tangential to the murder. Thus, Fell's culpability for the carjacking bears on Fell's blameworthiness for King's death.

## IV.  *Conclusion*

For the foregoing reasons, Fell's remaining challenges to the constitutionality of the FDPA (Docs. 44 and 80) are DENIED.  The government's Motion for Discovery of Mental Health Evidence (Doc. 34) is GRANTED in part and DENIED in part.  Fell's Motion to Dismiss Non–Statutory Aggravating Factors (Doc. 81) is DENIED.