Finally, Wilson makes the following two requests in his objections: (i) permit defense counsel to be present in the room during the Government's expert's interviewing and/or testing of Wilson, and (ii) authorize the video recording of any testing performed. The Court will address and deny each request in turn.
1. Right to Counsel During the Government's Neuropsychological Testing
Regarding his first request, Wilson acknowledges that his Atkins claim has resulted *572 in a limited waiver of his Fifth Amendment rights, but only with respect to matters relevant to his supposed intellectual disability. Def. Objs. at 22. Wilson claims that he has a right to have counsel present during any examination "to advise him and to interpose appropriate objections," thereby protecting "his Fifth Amendment right to remain silent as to matters beyond the scope of the [ Atkins ] hearing, and to effectuate his Sixth Amendment rights." Id. (citing Gibbs v. Frank, 387 F.3d 268, 274 (3d Cir. 2004) ). Insofar as Wilson's counsel is not permitted to be physically present during the formal test examination itself, Wilson requests that his counsel be present during any interview portion, and then be afforded a "nearby venue in which to sit and monitor proceedings, with an audio feed, so that counsel has an opportunity to object, albeit not simultaneously, if necessary." Id. at 23. At the very least, counsel should be provided a nearby venue to sit, observe, and listen to both the interviewing and the testing of Wilson. Id. at 23. The Court disagrees with Wilson that any of these procedures are necessary to protect his Fifth and Sixth Amendment rights.
First, courts have held that defense counsel's presence during a mental health examination is not necessary to protect a defendant's Fifth Amendment rights because Federal Rule of Criminal Procedure 12.2 provides that " '[n]o statement made by a defendant in the course of any examination conducted under this rule ... and no other fruits of the statement may be admitted into evidence against the defendant in any criminal proceeding except on an issue regarding mental condition' on which the defendant has introduced expert evidence pursuant to rule 12.2." United States v. Sampson, 335 F. Supp. 2d 166, 247 (D. Mass. 2004) (quoting Fed. R. Crim. P. 12.2(c)(4) ); United States v. Moore, No. 07-161, 2008 WL 1944810, at *3 (E.D. Ark. May 2, 2008) ("The Court agrees with the Sampson court's well-reasoned analysis and concludes that, having placed his mental health in issue, defendant does not have a Fifth Amendment right to have counsel present during the government's corresponding evaluation."); cf. United States v. Johnson, 362 F. Supp. 2d 1043, 1088 (N.D. Iowa 2005) (recognizing that " Rule 12.2 does not ... contain any provisions specifying the manner in which a defendant's Sixth Amendment right to counsel is to be protected in the context of a mental examination" (emphasis added)). And once Wilson put his mental condition at issue, he waived his right to raise a Fifth Amendment challenge to the Government's use of evidence obtained through a court-ordered examination to rebut his intellectual disability claim. Johnson, 362 F. Supp. 2d at 1088 (citing Powell v. Texas, 492 U.S. 680, 684, 109 S.Ct. 3146, 106 L.Ed.2d 551 (1989) (per curiam)). To the extent any interview or examination poses a risk to Wilson's Fifth Amendment rights beyond the purposes of rebutting his intellectual disability claim, this can be easily addressed through post-examination motions. United States v. Wilson, 920 F. Supp. 2d 287, 303-304 (E.D.N.Y. 2012).
Second, a criminal defendant has a Sixth Amendment right to the assistance of counsel before submitting to any neuropsychological testing that represents a "critical stage" of that defendant's prosecution. Estelle v. Smith, 451 U.S. 454, 468-470, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981). However, if advance notice of the scope and nature of the testing is provided so that counsel can discuss with the defendant the advisability of undergoing the testing and how the results of that testing may be used in the future, "there would be no Sixth Amendment violation."
*573 Johnson, 362 F. Supp. 2d at 1091 ("[F]or effective exercise of [the defendant's] Sixth Amendment rights, defense counsel must be informed of the 'nature and scope' of the 'mental health' proceedings[.]" (quoting Buchanan v. Kentucky, 483 U.S. 402, 424-425, 107 S.Ct. 2906, 97 L.Ed.2d 336 (1987) )); see also Wilson, 920 F. Supp. 2d at 305 ("[T]he Sixth Amendment does not require that a defendant be permitted to have counsel present at a mental examination conducted to rebut a psychiatric defense he has initiated; the Supreme Court has held only that counsel must be 'notified in advance' of the examination so that counsel may advise the defendant regarding 'the significant decision of whether to submit to the examination and to what end the psychiatrist's findings could be employed.' " (quoting Estelle, 451 U.S. at 471, 101 S.Ct. 1866 ) (emphasis omitted)). Here, the Government has provided defense counsel with sufficient notice of the nature and scope of the proposed neuropsychological testing such that Wilson can anticipate the Government's use of any neuropsychological evidence in rebuttal.
Moreover, as the Government notes its response to Wilson's objections, Gov't Resp. at 7, several courts have held that the physical presence of a third party, like defense counsel, during mental health examinations "can be disruptive and have adverse effects on the performance and outcome of the evaluation." Wilson, 920 F. Supp. 2d at 305 (collecting cases); see also Estelle, 451 U.S. at 470 n.14, 101 S.Ct. 1866 ("[A]n attorney present during the psychiatric interview could contribute little and might seriously disrupt the examination."); United States v. Baird, 414 F.2d 700, 711 (2d Cir. 1969) ("[T]he presence of a third party, such as counsel or a stenographer, at such an examination tends to destroy the effectiveness of the interview."); United States v. Fell, No. 5:01-cr-12-01, 2015 WL 13781291, at *2 (D. Vt. Oct. 9, 2015) ("The court is mindful that the physical presence of defense counsel at a mental health evaluation might impair the evaluation itself." (citing Baird, 414 F.2d at 711 ; Wilson, 920 F. Supp. 2d at 305 )); accord Giddens v. City of Suisun, No. 2:14-cv-0943, 2017 WL 3009189, at *3 (E.D. Cal. July 14, 2017) ("Since the presence of third party observers may, regardless of their good intentions, contaminate a mental examination, they are usually not allowed in the exam room." (citation and quotation marks omitted)). These concerns are present even when counsel sits out of the defendant's sight and remains silent except when imposing an objection, Wilson, 920 F. Supp. 2d at 305, as Wilson requests in his objections, see Def. Objs. at 22 ("To avoid any possible distracting effect on Mr. Wilson during Government testing or interviewing, counsel will sit out of his sight and remain silent except when imposing an objection.").[3] Although he argues that Baird and Wilson are not persuasive for their Sixth Amendment holdings, see Wilson Supp. Reply at 4, Wilson offers no contrary case law to suggest that there is no impact on either testing validity or examinee performance when third-party observers are physically present during the administration of mental health examinations.
Based on the reasoning of Sampson, Johnson, and Wilson, Wilson has waived his right to raise a Fifth Amendment challenge to the Government's use of evidence to rebut his Atkins claim, and defense counsel has been provided advance notice of the Government's proposed neuropsychological *574 testing to protect Wilson's Sixth Amendment right to counsel. Therefore, Wilson's request to have counsel present during the any portion of the Government's testing is denied.
2. Video Recording of Examination
Regarding his second request, Wilson claims that numerous courts have authorized the videotaping of the Government's mental condition examinations. Def. Objs. at 22. He is correct on this point. See, e.g., United States v. O'Reilly, No. 05-80025, 2010 WL 653188, at *5 (E.D. Mich. Feb. 19, 2010) ("Defense counsel may arrange for any rebuttal examination to be audio and/or videotaped."); Johnson, 362 F. Supp. 2d at 1091 (ordering all tests and interviews conducted by the government's mental health expert be audio recorded and provided to defense counsel by same-day or next-day delivery upon conclusion of each interview or testing session); United States v. Fell, 372 F. Supp. 2d 753, 761 (D. Vt. 2005) (permitting the tape recording of the mental health testing and interviews); Sampson, 335 F. Supp. 2d at 247-248 (exercising court's discretion to order mental health testing be video recorded). Wilson further requests that the Government provide a copy of the videotape to defense counsel no later than one day after the examination, and that the Government be precluded from using the videotape for any purpose other than addressing Wilson's claim of an intellectual disability at the Atkins hearing. Def. Objs. at 23-24.
In its response to Wilson's objections, the Government states that "[e]xperts are better equipped to determine the optimal testing environment and the effects that certain aspects of that environment could have on the integrity of the examination," and that Dr. Denney has "taken the position that videotaping, or the hidden recording of testing, raises ethical concerns." Gov't Resp. at 6-7. In support of the its position, the Government attached a December 23, 2013 declaration from Dr. Denney, in which he states that he is "very strongly opposed to secretive recording of [a] defendant" based, in part, on the "ethical concern" of such recording. 12/23/2013 Denney Decl. ¶ 8 (Dkt. 870-1) (declaration from United States v. Sablan, No. 1:08-cr-00259-PMP (E.D. Cal. Dec. 13, 2013)) (emphasis added). Dr. Denney also states in his declaration that he is "opposed to recording of the neuropsychological test administration on empirical grounds." Id. ¶ 5 (emphasis added). According to Dr. Denney, the "available empirical research demonstrates that third party observers (including presence of audio and/or video recording) alters the testing session in such a manner that test results may no longer reflect the valid performance of the examinee." Id. [4] Thus, Dr. Denney's declaration seems to advance two reasons against the video recording of Wilson's neuropsychological testing-the ethical concerns of secretive recording, and the effect of recording on testing results based on empirical research.
There are undoubtedly ethical concerns about the surreptitious or deceptive recording of mental health examinations, see, e.g., Gohl v. Livonia Pub. Schs., No. 12-cv-15199, 2015 WL 1469749, at *4 (E.D. Mich. Mar. 30, 2015) (recognizing that American Psychological Association's Ethical Principles of Psychologists and Code of Conduct "expressly condemn as unethical only surreptitious or deceptive recording, thereby suggesting that recording of an examination for which informed consent has been *575 obtained beforehand is not ethically problematic"). However, there is no suggestion that Dr. Denney perform any hidden or secretive recording. This ethical concern is, therefore, nonexistent in this case.
Regarding Dr. Denney's assertion that video recording "alters the testing session in such a manner that test results may no longer reflect the valid performance of the examinee," some courts, like the district court in Wilson, have recognized that recording examinations "are disfavored by courts for the same reasons that attorney presence is disfavored." Wilson, 920 F. Supp. 2d at 306. According to the Wilson court, "most courts analyze a request for recording in the same way that they evaluate a motion to permit the presence of an attorney, because, while recording is less intrusive than permitting a third-party to be present, it would still impede one-on-one communication between the patient and the examiner and tend to undermine the examiner's evaluator technique." Id. Because there were no specialized circumstances to justify a recording, the court rejected the defendant's request to have the examination videotaped. Id.
The Court has also reviewed the scholarly literature the Government provided in its supplemental brief, which suggests that video recording may affect an examinee's performance on certain types of neuropsychological testing. See, e.g., Angela D. Eastvold, et al., "Does a Third Party Observer Affect Neuropsychological Test Performance? It Depends," The Clinical Neuropsychological, Vol. 26, No. 3, at 520 (2012) ("Interestingly, a nonhuman observer (audio or video recorder) had a negative impact on performance that was of a medium effect size.... However, this finding is based on only four studies, two of which were by the same investigator. Therefore replicability of these findings and confirmation of the magnitude is needed.") (PageID.8365, Dkt. 892-5); Marios Constantinou, et al., "Effects of a Third Party Observer During Neuropsychological Assessment: When the Observer Is a Video Camera," Journal of Forensic Neuropsychology, Vol. 4(2), at 40 (2005) (recognizing that "there is some evidence in the social psychology literature that social facilitation effects occur when the individual believes that his/her performance is being videotaped for observation," and finding that "the presence of a video camera as the third party observer resulted in adverse performance on memory testing" but "did not influence any of the motor measures" of the testing group) (PageID.8326, 8332, Dkt. 892-3); A. John McSweeny, et al., "Ethical Issues Related to the Presence of Third Party Observers in Clinical Neuropsychological Evaluations," The Ethical Neuropsychologist, Vol. 12, No. 4, at 559 (1998) (suggesting, as an alternative to physical presence of third-party observer, "to record the testing session with audio or audiovisual devices," but cautioning that "the presumed relative lack of observer effects with [this alternative] awaits empirical confirmation and test security may be at risk") (PageID.8324, Dkt. 892-2); Robert J. McCaffrey, et al., "Presence of Third Parties During Neuropsychological Evaluations: Who Is Evaluating Whom?" The Clinical Neuropsychologist, Vol. 10, No. 1, at (1996) ("A potential compromise that has been suggested to deal with the issue of a third party observer is to use a one-way mirror or video-camera; however, the social facilitation[5 ] literature contains some *576 evidence that even an unobtrusive observer can influence task performance.") (PageID.8344, Dkt. 892-4).
Although the authors of these articles recommend that additional empirical studies should be conducted to further assess the magnitude of the social facilitation phenomenon's impact on examinee performance regarding nonhuman observers, none of them definitively found that video recording has no impact on an examinee's performance during a neuropsychological testing. Nor has Wilson directed this Court to any such finding.
Therefore, based on the current state of the scientific community's view regarding the potential influence video recording may have on an examinee's performance on neuropsychological tasks, as well as the fact that Wilson's Fifth and Sixth Amendment rights will not be violated by the absence of defense counsel during the neuropsychological testing, the Court denies this request.
SO ORDERED.

Wilson now appears to have walked back his request slightly, claiming that defense counsel would "be present at the examination not to interrupt the testing to state objections, but simply to observe and gather information for cross-examination." Def. Supp. Reply at 5.

The Government provided the Court with the scientific papers Dr. Denney relied on for his assertion (Dkt. 892).

The "social facilitation" phenomenon has been described as "a situation in where the mere presence of another alters one's behavior, either positively or negatively." Angela D. Eastvold, et al., "Does a Third Party Observer Affect Neuropsychological Test Performance? It Depends," The Clinical Neuropsychological, Vol. 26, No. 3, at 520 (2012) (PageID.8351, Dkt. 892-5).