*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DONYELLE MICHAEL BLACK,

Defendant-Appellant.

FOR PUBLICATION
December 19, 2024
2:15 PM

No. 367831
Oakland Circuit Court
LC No. 88-083715-FC

Before: O'BRIEN, P.J., and MURRAY and PATEL, JJ.

MURRAY, J.

At defendant's suggestion, he and his accomplice decided to rob a random person. To the great misfortune of Wanda Sutherland, defendant chose her as the victim. So, with his sawed-off rifle, defendant and his accomplice robbed Sutherland of her money, and then decided to take her into the woods, where they both repeatedly raped and beat her. After that, while begging for her life, defendant shot Sutherland twice in the head. Based on these events, defendant was convicted of (amongst other crimes) first-degree murder (felony murder), MCL 750.316(1)(b), for which he was sentenced to mandatory life in prison without the possibility of parole.

However, because defendant was a juvenile when he committed the robbery, rape, and murder, he was entitled to a new sentencing hearing under *Miller v Alabama*, 567 US 460; 132 S Ct 2455; 183 L Ed 2d 407 (2012). After listening to the evidence and weighing the relevant factors, the trial court exercised its discretion and re-imposed defendant's sentence of life without the possibility of parole. In a prior appeal,[1] and as a result of the parties' stipulation and a change in

---

[1] There were three prior appeals in this case. After an appeal as of right, we affirmed defendant's convictions. *People v Black*, unpublished per curiam opinion of the Court of Appeals, issued June 14, 1993 (Docket No. 113238). Twenty-five years later, in a consolidated appeal, we affirmed the trial court's order not to strike the prosecutor's motion to impose a life sentence without the possibility of parole. *People v Hayes*, 323 Mich App 470; 917 NW2d 748 (2018). As noted, after a joint motion to remand, we subsequently vacated defendant's amended sentence and remanded

the law, we vacated defendant's amended sentence and remanded for a second *Miller* hearing. *People v Black*, unpublished order of the Court of Appeals, entered March 1, 2023 (Docket No. 362394). In this fourth appeal, defendant appeals by leave granted an order resolving an evidentiary issue prior to defendant's second *Miller* hearing.[2] We affirm.

## I. FACTUAL BACKGROUND

As just recounted, in 1987, when defendant was 15 years old, he and his accomplice raped, assaulted, robbed, and murdered Sutherland. Following a bench trial, defendant was convicted of felony murder, armed robbery, and felony-firearm. Defendant was sentenced to mandatory life imprisonment without the possibility of parole on his felony murder conviction.

After the United States Supreme Court's decisions in *Miller* and *Montgomery*,[3] the prosecution moved to reimpose defendant's nonparolable life sentence. During defendant's first *Miller* hearing the prosecution did not call any witnesses. The defense called several witnesses, who discussed defendant's difficult home life as a child and his rehabilitation efforts in prison. Included was the testimony of Carol Holden, defendant's psychological expert.

For use at the first *Miller* hearing Holden created a "Psychological Evaluation and Expert Report" on defendant. In preparing her report, Holden relied on a four-hour interview she conducted with defendant. She also relied on a number of past documents, including defendant's presentence investigation report, past psychological evaluations, educational records, medical records, records from the Michigan Department of Corrections and the Oakland County Jail, appellate records, and trial court transcripts. The parties stipulated to admit the report.

During the hearing Holden testified that defendant was 15 years old at the time of the crimes, and demonstrated developmentally immature traits, normal for a 15-year-old, such as impulsivity and susceptibility to peer pressure. Additionally, defendant demonstrated traits not typical for a 15-year-old, such as lack of empathy and remorse. Holden discussed defendant's difficult upbringing, opining that he was "exposed to high levels of crime around him and high levels of community violence" when young.

According to Holden, although defendant lacked empathy in his youth, as he matured "he started developing empathy and remorse, imagining what it would be like for the loved one of somebody who was the victim of a crime." During the first decade of defendant's prison sentence, he accumulated about 53 misconducts. However, since then defendant's prison behavior changed significantly, as according to Holden he has "made huge strides academically, intellectually, and

---

for resentencing. *People v Black*, unpublished order of the Court of Appeals, entered March 1, 2023 (Docket No. 362394).

[2] *People v Black*, unpublished order of the Court of Appeals, entered January 17, 2024 (Docket No. 367831).

[3] See *Miller*, 567 US 460 and *Montgomery v Louisiana*, 577 US 190, 206-209; 136 S Ct 718; 193 L Ed 2d 599 (2016) (holding *Miller* applies retroactively).

especially with his personality." As a result, Holden opined that defendant demonstrated a capacity for rehabilitation.

After the hearing, the trial court entered an order, finding the *Miller* factors did not weigh against a life sentence without the possibility of parole. The trial court also found that a sentence of life without the possibility of parole was proportionate to the crime. Defendant appealed as of right his amended judgment of sentence and, after a joint motion to remand by the parties, we vacated defendant's amended judgment of sentence and remanded for resentencing "in accordance with the prosecution's burden and reconsideration of the mitigating factors established in [*People v Taylor*, 510 Mich 112, 119-120; 987 NW2d 132 (2022)]." *People v Black*, unpublished order of the Court of Appeals, entered March 1, 2023 (Docket No. 362394).

On remand, the prosecution moved the trial court to either (a) "compel defendant to submit to a psychological examination by prosecution expert Kris Mohandie," or (b) "strike the psychological testimony and report of defense expert Carol Holden and to preclude the admission of additional psychological testimony and/or reports by defense experts." The trial court granted the prosecution's motion to compel, holding that defendant must "submit to a psychological examination by prosecution expert Kris Mohandie by October 1, 2023," or the "parties may stipulate to set this order aside and strike the psychological testimony and report of defense expert Carol Holden." This appeal followed.

## II. PRESERVATION AND STANDARDS OF REVIEW

"Preservation requirements apply to both constitutional and nonconstitutional issues. To preserve an issue, a party must raise it before the trial court." *People v Swenor*, 336 Mich App 550, 562; 971 NW2d 33 (2021) (citation omitted). Defendant argued below that compelling the psychological evaluation would violate his Fifth Amendment right against self-incrimination, but did not argue it would violate his constitutional right to a fair trial. Consequently, defendant's Fifth Amendment issue is preserved, but his fair trial issue is not.

"We review constitutional issues de novo." *People v Pennington*, 240 Mich App 188, 191; 610 NW2d 608 (2000). "We review the trial court's decision regarding evidence for an abuse of discretion. We review de novo questions of law related to the admission or exclusion of evidence. The trial court abuses its discretion when the result is outside the range of principled outcomes." *People v Duenaz*, 306 Mich App 85, 102; 854 NW2d 531 (2014) (citations omitted).

"Appellate courts may grant relief for unpreserved errors if the proponent of the error can satisfy the 'plain error' standard . . . ." *People v Cain*, 498 Mich 108, 116; 869 NW2d 829 (2015).

> To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings. [*People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999) (citation omitted).]

## III. SELF-INCRIMINATION

-3-

According to defendant, the trial court order compelling him to submit to a psychological evaluation by the prosecution's expert, or striking Holden's report and testimony, violated his federal and state constitutional right against self-incrimination. Defendant, however, cannot "have his cake and eat it too," *People v Hutchinson*, 155 Mich App 84, 88 n 1; 399 NW2d 448 (1986), for once he places into evidence his own expert's psychological report (that used information obtained from defendant), the Fifth Amendment (or its state counterpart) cannot then be used as a shield to prevent the prosecution from accessing similar information from defendant for their own expert's use, *People v Fields*, 450 Mich 94, 109; 538 NW2d 356 (1995) (the "protective shield of the Fifth Amendment should not be converted into a sword that cuts back on the area of legitimate comment by the prosecutor on the weaknesses in the defense case") (quotation marks, citation, and alteration omitted).

"The Fifth Amendment of the United States Constitution guarantees that the government cannot compel a defendant in a criminal case to testify against himself. This protection has been applied to the states through the Due Process Clause of the Fourteenth Amendment." *People v Cheatham*, 453 Mich 1, 9; 551 NW2d 355 (1996).[4] "Art 1, § 17 of the Michigan Constitution affords defendants a corresponding state constitutional right to be free from compelled self-incrimination." *Id*, at 9.[5] The Fifth Amendment right against self-incrimination has been applied in the context of sentencing hearings. See *People v Wright*, 431 Mich 282, 289; 430 NW2d 133 (1988) (holding the defendant "had a Fifth Amendment right to remain silent at his presentence psychiatric examination").

In the context of a trial, the Supreme Court has held that "where a defense expert who has examined the defendant testifies that the defendant lacked the requisite mental state to commit a crime, the prosecution may offer evidence from a court-ordered psychological examination for the limited purpose of rebutting the defendant's evidence." *Kansas v Cheever*, 571 US 87, 98; 134 S Ct 596; 187 L Ed 2d 519 (2013). "Any other rule would undermine the adversarial process,

---

[4] The Fifth Amendment to the United States Constitution provides:

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation. [US Const, Am V.]

[5] Art 1, § 17 of the Michigan Constitution provides:

No person shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty or property, without due process of law. The right of all individuals, firms, corporations and voluntary associations to fair and just treatment in the course of legislative and executive investigations and hearings shall not be infringed. [Const 1963, art 1, § 17.]

-4-

allowing a defendant to provide the jury, through an expert operating as proxy, with a one-sided and potentially inaccurate view of his mental state at the time of the alleged crime." *Id*. at 94. Similarly, and relative to capital sentencing, the Court has held that "[a] criminal defendant, who neither initiates a psychiatric evaluation nor attempts to introduce any psychiatric evidence, may not be compelled to respond to a psychiatrist if his statements can be used against him at a capital sentencing proceeding." *Estelle v Smith*, 451 US 454, 468; 101 S Ct 1866; 68 L Ed 2d 359 (1981). If, however, "a defendant requests such an evaluation or presents psychiatric evidence, then, *at the very least*, the prosecution may rebut this presentation with evidence from the reports of the examination that the defendant requested." *Buchanan v Kentucky*, 483 US 402, 422-423; 107 S Ct 2906; 97 L Ed 2d 336 (1987) (emphasis added).

Applying the legal principals of *Cheever*, *Buchanan*, and *Estelle* to this circumstance, we hold that the trial court's order did not violate defendant's right against self-incrimination because the prosecution seeks to offer the evidence, as part of the new burden of proof imposed upon it by *Taylor*, for at least the limited purpose of rebutting Holden's examination and testimony, which will provide the court with a complete picture of defendant. In other words, because "the prosecutor bears the burden of proof at a *Miller* hearing[,]" and "[t]hat burden is to rebut a presumption that the particular juvenile defendant is not deserving of" life without parole, *Taylor*, 510 Mich at 138, providing the prosecution the ability to have its expert meet with defendant for purposes of expert evaluation and testimony to rebut defendant's evidence does not violate his right against self-incrimination.

Many state appellate courts have addressed whether a trial court can, consistent with the Fifth Amendment, compel a defendant to cooperate with a state expert witness during the sentencing phase of the case. Those courts are uniform in concluding that, consistent with *Estelle*, *Cheever*, and *Buchanan*, the Fifth Amendment is not violated (or the right is waived) by requiring defendant to cooperate with a state expert hired to rebut the evidence defendant is submitting on the issue. See, e.g., *Allen v State*, 322 So 3d 589, 602 (Fla, 2021) (In concluding that defendant waived his Fifth Amendment rights when he adopted as his own a mental health assessment of him submitted by an amicus, the court held "that by making the mental health mitigation presented by amicus counsel his own, Allen has forfeited his claim. The Fifth Amendment is a shield, not a sword or a scalpel," and "does not provide cover for unrebutted mental health mitigation . . . ."); *Commonwealth v Sartin*, 561 Pa 522, 528; 751 A2d 1140 (2000) (holding that when defendant submits a psychological report, "the Fifth Amendment does not preclude the government from gaining a balanced perspective of the defendant's psychological makeup"); *State v Huskey*, 964 SW2d 892, 900 (Tenn, 1998) (reasoning that "the court-ordered examination and the disclosure of the examination material does not violate the defendant's right against self-incrimination, provided the admissibility of any statements made by the defendant during the examination, and any 'fruits' derived therefrom, is only for impeachment or rebuttal of evidence of mental condition introduced at trial by the defendant"); *Hicks v State*, 378 So 3d 1071, 1093 (Ala Crim App, 2019) (citing to *Estelle*, court held that defendant's "Fifth Amendment rights against self-incrimination were not violated by the introduction of Dr. Kirkland's testimony or report regarding his psychological evaluation of Hicks"); *State v Madison*, 160 Ohio St 3d 232, 255; 2020-Ohio-3735; 155 NE3d 867 (2020) ("[W]hen the defendant demonstrates an intention to use expert testimony from a mental examination in the penalty phase, the Fifth Amendment permits the trial court to order that the defendant submit to a mental examination by an expert of the state's choosing.").

Consistent with these decisions, we hold that when a defendant intends on submitting an expert witness and report to the trial court that addresses any relevant *Miller* factors, neither the Fifth Amendment nor art 1, § 17 of the Michigan Constitution are violated when the defendant is required by court order to submit to an examination by a state witness. Whether viewed as a waiver of his right by placing his current status at issue, *Allen*, 322 So3d at 602, or as a substantive conclusion that nothing in the amendment allows a defendant to submit evidence relevant to his current mental status while at the same time refusing the prosecution access to the same information and opportunity, the trial court order did not violate defendant's rights under either constitutional provision.

After all, the trial court is tasked with determining an appropriate sentence for defendant, and how that determination can be made is multi-faceted. Certain factors to be considered under *Miller* are static and immutable, such as defendant's age at the time of the crimes, his family situation, and the circumstances of the criminal offense. *Miller*, 567 US at 477-478.[6] What remains to be determined is how such factors existing during defendant's youth have changed over time and, in turn, his "possibility of rehabilitation." *Id.* To fairly make this determination requires an assessment of defendant in the present. While much of this is factual, such as considering defendant's record while in prison, his participation in programs, and other developmental efforts, it is also important to ascertain his current understanding of his prior behavior, and whether his behavior has changed with physical and emotional maturation. Professional testing or evaluation of defendant at this point in his life is one way to ascertain his current status. And again, as the trial court held, defendant's cooperation is premised on his intent to admit Holden's testimony and supporting evidence.[7]

We disagree with defendant that the prosecution missed its opportunity to rebut Holden's report and testimony by failing to offer evidence of its own expert witness at the initial *Miller* hearing. Defendant's first *Miller* hearing took place before *Taylor*, which as noted, placed the burden of proof at a *Miller* hearing on the prosecution to *rebut* a presumption that the defendant is not deserving of life without parole. *Taylor*, 510 Mich at 138. Thus, in the second *Miller* hearing the burden will be on the prosecution to overcome a rebuttable presumption against life without parole. See *id.* at 129. If defendant intends on again presenting Holden (or another expert) as a

---

[6] The *Miller* Court established factors that a sentencing court must consider, now known as the "*Miller* factors," which include:

> (1) chronological age and immaturity, impetuosity, and the failure to appreciate risks and consequences; (2) the offender's family and home environment; (3) circumstances of the offense, including the extent of participation in the criminal conduct and the effect of familial and peer pressures; (4) the effect of the offender's youth on the criminal-justice process, such as the offender's inability to comprehend a plea bargain; and (5) the possibility of rehabilitation. [*People v Parks*, 510 Mich 225, 238; 987 NW2d 161 (2022).]

[7] Further, there is nothing precluding defendant's invocation of his Fifth Amendment right against self-incrimination, as appropriate, during an evaluation as it relates to issues that are irrelevant to his sentencing.

-6-

witness, and her report is again submitted to the trial court, nothing prevents the prosecution from now introducing new rebuttal evidence. This holds true for two reasons. First, defendant's renewed sentence after the first *Miller* hearing was vacated and the matter was remanded for a new hearing, allowing the court to accept the same and additional relevant information. See *People v Rosenberg*, 477 Mich 1076; 729 NW2d 222 (2007) ("Once the Court of Appeals vacated the defendant's original sentence and remanded for resentencing, the case was before the trial court in a presentence posture, allowing for objection to any part of the new sentence.").

Second, and as we have discussed, the right against self-incrimination does not preclude requiring defendant to cooperate with a state expert who will be rebutting Holden's evidence. As the *Buchanan* Court recognized, in proper situations "the State might have an interest in introducing psychiatric evidence to rebut petitioner's defense[.]" *Buchanan*, 483 US at 422. This is one of those circumstances.

Thus, while recognizing that defendant retains his Fifth Amendment privilege against self-incrimination, it remains the case that the privilege cannot be selectively asserted in an effort to control what narrative or information is available to a court and the prosecutor. Even as a general rule, in the context of testimony and cross-examination, "a witness, in a single proceeding, may not testify voluntarily about a subject and then invoke the privilege against self-incrimination when questioned about the details." *Mitchell v United States*, 526 US 314, 321; 119 S Ct 1307; 143 L Ed 2d 424 (1999). Allowing a witness when testifying to "pick and choose what aspects of a particular subject to discuss" would call into question the "trustworthiness of the statements" and limit "the integrity of the factual inquiry." *Id*. at 322. Any resultant distortion by allowing an individual to completely control the narrative could "make of the Fifth Amendment not only a humane safeguard against judicially coerced self-disclosure but a positive invitation to mutilate the truth a party offers to tell." *Id*. (quotation marks and citation omitted). The trial court order was not in error.

## IV. FAIR TRIAL

We now turn to defendant's second argument: that the trial court's order denied him the constitutional right to a fair trial.

"The United States Supreme Court made this key distinction, between claims that the prosecutor violated a specific, enumerated constitutional right and claims of violation of the general due-process right to a fair trial." *People v Blackmon*, 280 Mich App 253, 261; 761 NW2d 172 (2008). "Although any error can potentially be argued to have deprived a defendant of his due-process fair-trial right, not every trial error is constitutional in nature. Merely framing an issue as constitutional does not make it so." *Id*. (citations omitted).

The right to a fair trial does not apply in the context of a *Miller* hearing. Our Supreme Court has differentiated between the right to a fair trial and unfair conduct at sentencing hearings. The Court explained:

> It is enough, at this point, to say that the trial judge's conduct was well outside the bounds of what we consider an appropriate way to conduct a sentencing hearing—even one involving a difficult person. Had this exchange or one like it occurred

earlier in the trial, there is little doubt it would have called into question whether defendant was deprived of a fair trial. [*People v Walker*, 504 Mich 267, 287 n 13; 934 NW2d 727 (2019).]

As a result, there was no fair trial violation because the trial court's order was entered outside the context of a trial.[8] Regardless of the differences between *Miller* hearings and other sentencing hearings,[9] a *Miller* hearing is not a trial. Defendant has not presented any authority, wherein we applied the constitutional right to a fair trial in the context of a *Miller* hearing or a sentencing hearing. The trial court's order did not violate defendant's right to a fair trial.[10]

Affirmed.

/s/ Christopher M. Murray
/s/ Colleen A. O'Brien
/s/ Sima G. Patel

---

[8] Additionally, we note there is nothing in the trial court's order that would rise to the level of a fair trial violation, even if it had occurred in the context of a trial.

[9] Our Supreme Court has differentiated between typical sentencing hearings and *Miller* hearings, explaining,

> [A] *Miller* hearing is not comparable to an ordinary sentencing hearing in which neither the prosecutor nor the defendant generally bears any particular burden. A *Miller* hearing has unique constitutional implications beyond those present at other sentencing hearings because it necessarily involves defendants who commit crimes when they are juveniles—individuals who are "constitutionally different" from their adult counterparts for purposes of sentencing. [*Taylor*, 510 Mich at 133 (citation omitted).]

Further, "unlike a typical sentencing, a *Miller* hearing is not a natural progression of a criminal proceeding because the prosecutor must file a motion to change the status quo posttrial." *Id.* The "constitutional implications" discussed in *Taylor* are rooted in the Eighth Amendment right against cruel and unusual punishment, not the constitutional right to a fair trial. *Id.*

[10] Defendant's brief on appeal also raises a third issue, arguing we should reverse the trial court's order based on general fairness considerations. We decline to address this issue. This appeal is limited to the issues raised in defendant's application for leave to appeal, *People v Black*, unpublished order of the Court of Appeals, entered January 17, 2024 (Docket No. 367831), and this issue was not raised in his application, taking it beyond the scope of this appeal, see *People v White*, 337 Mich App 558, 567 n 3; 977 NW2d 138 (2021).